MOTOR WHEEL CORPORATION, Appellant,

v.

GOODYEAR TIRE & RUBBER COMPANY, Appellee.■

[Cite as *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65948.

Decided Oct. 11, 1994.

*Maynard F. Thomson* and *Matthew L. Kuryla,* for appellant.

*Louis E. Tosi* and *Joseph S. Simpson,* for appellee.

DONALD C. NUGENT, Judge.

This is an appeal from a judgment of the Cuyahoga County Court of Common Pleas which denied appellant Motor Wheel Corporation's petition to modify or vacate an arbitration award. Motor Wheel assigns the following error for review:

"The court of common pleas erred in overruling, without opinion, Motor Wheel's petition to modify arbitration award."

On December 30, 1986, Goodyear Tire & Rubber Company ("Goodyear") and Motor Wheel signed a purchase agreement whereby Motor Wheel purchased certain stocks and assets comprising Goodyear's rim and wheel manufacturing business. Included among the assets were eight manufacturing plants.

Following the sale, the parties became involved in a dispute over the meaning of the indemnification provisions in the purchase agreement. The purchase

agreement contained a broad environmental indemnity whereby Goodyear agreed to reimburse Motor Wheel for:

"(e) any liability, claim, or obligation arising out of or relating to (i) any pollutants, contaminants, or other substances located on any of the Premises, the Owned Real Property, the Lease Real Property, or other real property at any time in possession of Motor Wheel or Motor Wheel Canada; or (ii) any pollutants, contaminants, or other substances, wherever located, which were generated, transported, stored, treated, disposed of, or otherwise handled by Motor Wheel or Motor Wheel Canada prior to the Share Purchase Closing or by Goodyear prior to the Asset Purchase Closing (including without limitation, any liability, claims, or obligation relating to the clean up of the sites listed on Exhibit XII–A),

"(f) any and all liabilities, claims, and obligations of Motor Wheel and Motor Wheel Canada incurred, or arising out of or relating to events occurring or conditions existing, prior to the Share Purchase Closing, whether fixed or contingent, known or unknown, not reflected on Exhibit XII–A of this agreement * * *."

The indemnification provisions were not without restriction. Motor Wheel's buyers agreed to give Goodyear a list of known environmental problems at the date of closing, plus a written notification by December 30, 1989 for some properties and by December 30, 1991 for the remainder, identifying the "pollutants, contaminants or other substances" that would be subject to the environmental indemnity. This provision became known as the "notice requirement."

In the years following the sale, Motor Wheel incurred specific expenses to remove and dispose of materials containing asbestos (primarily pipe insulation) and equipment containing polychlorinated biphenyls ("PCBs") (primarily electrical transformers). Between 1989 and 1992, Motor Wheel presented Goodyear with a number of invoices reflecting the costs incurred in removing or disposing of these asbestos/PCB items, seeking indemnification. Goodyear contended that the expenses were not reimbursable under the purchase agreement as the items were not in violation of the law and were not subject to a regulatory removal requirement on the date of closing and, therefore, denied Motor Wheel's requests for indemnification. Unable to resolve their dispute over whether the environmental indemnity covered the removal and disposal of asbestos and PCB items, the parties agreed to submit the matter to arbitration.

On July 6, 1992, the parties signed a "Submission Agreement." The agreement identified three "environmental controversies" for resolution by the arbitrator:

"1. The extent to which Goodyear is required to reimburse Motor Wheel for asbestos and/or PCB cleanup, removal and/or other such related costs and expenses under the purchase agreement.

"2. The extent to which Goodyear is required to reimburse Motor Wheel for specific environmental expenses incurred by Motor Wheel which Goodyear has denied.

"3. The obligation of Goodyear to reimburse Motor Wheel for future environmental clean up costs associated with a continuing release of pollutants, contaminants or other substances located on Motor Wheel real property, said releases having occurred both prior to the purchase of Motor Wheel from Goodyear and subsequent to the acquisition."

The third environmental controversy was settled and withdrawn by the parties prior to the arbitration hearing.

As part of the arbitration process, each party also submitted a "specification of issues" further defining the scope of the environmental controversies submitted to arbitration. Except for the matters of attorney fees and prejudgment interest, both of the parties' specifications were the same. Both submissions framed the issues for arbitration as follows:

"1. *Declaration with Respect to Asbestos and PCB Removal Costs*

"Whether the Purchase Agreement, dated December 30, 1986, between Goodyear and MWC Holdings, Inc. (the 'Purchase Agreement') obligates Goodyear to indemnify Motor Wheel for the cost of cleanup, removal and disposal of all asbestos containing materials ('asbestos') and polychlorinated biphenyls ('PCBs') that were located on the Premises or the owned Real Property (as defined in the Purchase Agreement) on December 30, 1986, including all asbestos and PCBs that were not, on that date, in violation of any environmental laws or subject to any regulatory requirement of removal. In this arbitration Motor Wheel seeks a declaration that the Purchase Agreement imposes such an obligation on Goodyear. Goodyear seeks a declaration that the Purchase Agreement imposes no such obligation.

"2. *PCB and Asbestos Costs Already Incurred by Motor Wheel*

"Whether the Purchase Agreement obligates Goodyear to indemnify Motor Wheel for the following costs already incurred by Motor Wheel for cleanup, removal and disposal of asbestos and PCBs: [listing of twelve invoices totalling $126,426.51.]"

Each party's specification of issues also contained a provision reserving from arbitration all issues not specifically addressed in the specification.

On February 2, 1993, the arbitrator issued his opinion and award on the environmental issues. The arbitrator found that the term "obligation," as used in the indemnification provision of the purchase agreement, was sufficiently broad to include business judgments or moral judgments to remove the asbestos-contain-

ing materials or PCB-containing equipment at issue as opposed to just governmentally enforceable responsibilities. The arbitrator also concluded that the phrase "pollutants, contaminants or other substances" is sufficiently comprehensive to include asbestos or PCBs when business judgment dictates their removal and disposal. The arbitrator further concluded that Goodyear was not obligated in perpetuity to reimburse Motor Wheel for costs associated with the removal or disposal of PCB-containing equipment or asbestos-containing materials from the premises. Rather, the arbitrator concluded that the purchase agreement's notice requirement acts as a time bar to any obligations regarding any expense incurred for the removal or disposal of PCB-containing equipment or asbestos-containing material of which Motor Wheel did not provide written notice to Goodyear within the time limits prescribed by Section 15.1(e) of the purchase agreement.[1] To this end, Paragraph III of the arbitrator's opinion states:

"The requirement for written notice about 'obligations' regarding pollutants, contaminants, or other substances precludes reimbursement under Section 15.1(e) for any expense in removing or disposing of PCB or asbestos which Motor Wheel did not accomplish and report within the prescribed time limits. Goodyear quite reasonably sought and obtained a time limitation for the resolution of such matters."

Having reached the above conclusions, the arbitrator awarded Motor Wheel $126,426.51, which constituted the total of the twelve invoices for expenses already incurred by Motor Wheel for removing and/or disposing of the asbestos and PCB items, plus pre-award interest on those invoices totalling $16,715.73, for a total award of $143,142.24. The arbitrator added that Goodyear has "no comparable future obligation since the time for written notice has expired for all transferred properties or premises" under the purchase agreement's notice requirement.

Premised upon the belief that Paragraph III caused an inconsistency between the opinion and the award itself, Motor Wheel sought reconsideration of the opinion and award by the arbitrator. Specifically, Motor Wheel argued that the arbitrator's reasoning regarding Goodyear's future liability for indemnification of PCB and asbestos-related expenses was flawed, as nine of the twelve expenses awarded to Motor Wheel were incurred after the 1989 and 1991 notice dates had

---

1. The time limits prescribed by Section 15.1(e) of the purchase agreement are as follows:
   "(i) three years from the Share Purchase Closing with respect to claims, liabilities, or obligations relating to pollutants, contaminants, or other substances located on the Owner Real Property or [December 30, 1989];
   "(ii) five years from the Share Purchase Closing with respect to claims, liabilities or obligations relating to pollutants, contaminants, or other substances located on the Premises [December 30, 1991]."

passed. Motor Wheel further argued that the parties had reached a separate agreement prior to the arbitration regarding the proper interpretation of the notice requirement and that the arbitrator's opinion contradicted this prior agreement. To remedy this perceived inconsistency, Motor Wheel asked the arbitrator to withdraw Paragraph III from his opinion. Goodyear, contrarily, asked the arbitrator to withdraw award of the nine expense items.

In his opinion on reconsideration, issued on February 23, 1993, the arbitrator declined to modify his original opinion. The arbitrator explained as follows:

"Motor Wheel sought a declaration whether Goodyear's environmental indemnity covers items that were in service and in compliance on December 30, 1986. The arbitrator responded that Goodyear's reimbursement responsibility covers specific PCB and asbestos materials that were in service and in compliance with governmental regulations on December 30, 1986, if and only if Motor Wheel gave Goodyear written notice within the stated time limits that Motor Wheel's business judgment dictated their prompt removal.

"The Submission Agreement and Motor Wheel's Specification of Issues for Arbitration authorized the arbitrator to provide that response. R.C. 2711.01(A); 2721.02; cf. *Queen City Lodge No. 69, Fraternal Order of Police v. Cincinnati* (1992), 63 Ohio St.3d 403 [588 N.E.2d 802], syllabus. This Opinion on Reconsideration may clarify the arbitrator's February 2 decision, but it does not modify that decision's substantive meaning.

"Goodyear complains that the arbitrator's decision directed Goodyear to reimburse Motor Wheel for some specific items concerning which Motor Wheel failed to provide timely notice. However, Goodyear asserted no objection at the hearing or in its prehearing brief regarding the timeliness of the twelve specific claims. Since Goodyear's timeliness defense would be an exception to its general responsibility, Goodyear had the burden of asserting and proving untimeliness.

"The parties stipulated the amounts and other data relating to those twelve specific claims, but provided no evidence to show when Motor Wheel provided Goodyear written notice about a need to remove those specific items. The arbitrator resolved the issues with evidence that the parties provided for that purpose, and cannot consider contrary evidence now."

Thereafter, on April 29, 1993, Motor Wheel petitioned the Cuyahoga County Court of Common Pleas to modify or vacate the arbitration award. Motor Wheel asserted that the award should have been vacated under R.C. 2711.10(D),[2] which

---

**2.** R.C. 2711.10 provides as follows:

"In any of the following cases, the court of common pleas shall make an award vacating the award upon the application of any party to the arbitration if:

allows for vacation when arbitrators exceed their powers, or modified under R.C. 2711.11(B),[3] which allows for modification when arbitrators have awarded on a matter not submitted to them, because the arbitrator exceeded his authority by limiting the scope of Goodyear's liability for indemnification of the cost of removing and disposing of asbestos and PCB items to claims for which Motor Wheel provided written notice to Goodyear within the time periods set forth in the notice requirement, Section 15.1(e) of the purchase agreement. Motor Wheel also argued that the arbitrator's opinion in this regard directly contradicted a prior agreement reached between the parties concerning notice of claims.

Goodyear subsequently filed a motion to confirm the arbitration award and a brief in response to the petition to vacate. Goodyear argued that the issue of the extent of its liability for indemnifying Motor Wheel for the cost of removing and/or disposing of asbestos and PCBs was squarely before the arbitrator, that the arbitrator did not exceed the scope of his authority in deciding the same, and that, therefore, the common pleas court should deny Motor Wheel's petition to modify the arbitration award.

On July 8, 1993, the trial court, without opinion, issued a journal entry overruling Motor Wheel's petition and confirming the arbitration award. It is from this judgment that Motor Wheel now appeals.

■ A common pleas court's review of an arbitration decision is quite narrow. *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 511, 330 N.E.2d 703, 706; *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 596 N.E.2d 571. The court may not review the merits of an arbitration and can set aside an arbitration award only if the party attempting to set aside the award is able to establish that the award is defective in a manner recognized by R.C. Chapter 2711. *Warren Edn. Assn. v. Warren City Bd. of Edn.* (1985), 18 Ohio St.3d 170, 18 OBR 225, 480 N.E.2d 456; *Lockhart v. Am. Res. Ins. Co.* (1981), 2 Ohio App.3d 99, 101, 2 OBR 112, 114, 440 N.E.2d 1210, 1213; see, also, *Findlay Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186; *State Farm Mut. Ins. Co. v. Blevins* (1990),

---

"*  *  *  *

"(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

**3.** R.C. 2711.11 provides that:

"In any of the following cases, the court of common pleas in the county wherein an award was made in an arbitration proceeding shall make an order modifying or correcting the award upon the application of any party to the arbitration if:

"*  *  *  *

"(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted *  *  *."

49 Ohio St.3d 165, 551 N.E.2d 955; *Huber Hts. v. Fraternal Order of Police, supra.*

█ The fact that the common pleas court may have arrived at a different conclusion than did the arbitrator is immaterial. The common pleas court does not balance the equities, weigh the evidence or assess the credibility of witnesses. *Warren Edn. Assn. v. Warren City Bd. of Edn., supra; Sparks v. Barnett* (1992), 78 Ohio App.3d 448, 605 N.E.2d 408. Instead, a common pleas court is bound by an arbitrator's factual findings and serves only as a mechanism to enforce the arbitrator's award. *Warren Edn. Assn. v. Warren City Bd. of Edn., supra; Lockhart v. Am. Res. Ins. Co., supra,* 2 Ohio App.3d at 101, 2 OBR at 114, 440 N.E.2d at 1213.

The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of "junior varsity trial courts" offering the losing party complete and rigorous *de novo* review. See *Natl. Wrecking Co. v. Internatl. Bhd. of Teamsters, Local 731* (C.A. 7, 1993), 990 F.2d 957.

By the same token, respect for the parties' contract justifies the limited review undertaken by the court of common pleas. An arbitrator draws his power from the parties' contract. It is elementary that parties cannot be required to submit to arbitration any dispute which they have not agreed so to submit. *Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. Although doubts about an arbitrator's authority should be resolved in favor of arbitration, *id.* at 583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417, for a court to enforce an award that clearly is beyond the arbitrator's authority denies the parties of the benefit of their bargain just as surely as overturning an award because the court disagrees with a decision on a legal or factual basis.

The standard of appellate review of a decision of the court of common pleas denying a petition to vacate and/or modify an arbitration award on the grounds that the award exceeds the scope of the arbitrator's authority, or is on a matter not submitted for determination, is not as clear as the standard employed by the court of common pleas, set forth above. See, e.g., *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141; *Oil, Chem. & Atomic Workers Internatl. Union, AFL–CIO, Local 7–629 v. RMI Co.* (1987), 41 Ohio App.3d 16, 534 N.E.2d 110; *Lockhart v. Am. Res. Ins. Co., supra.* Motor Wheel seemingly argues that we review a common pleas court's denial of a motion to

vacate an arbitration award *de novo*. That is, in reviewing the common pleas court's denial of Motor Wheel's motion to vacate the arbitration award, this appellate court stands in the shoes of the common pleas court and determines whether Motor Wheel established grounds to vacate or modify the arbitration award pursuant to R.C. Chapter 2711. Goodyear, on the other hand, seems to suggest that the more deferential abuse of discretion standard is appropriate. An abuse of discretion connotes more than an error of law or judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 111, 616 N.E.2d 218, 222.

In the absence of further guidance from the Ohio Supreme Court, we will consider the merits of this appeal under both standards of review.

Motor Wheel advanced two principal arguments in the court of common pleas to support its petition to vacate the arbitration award.[4] First, Motor Wheel argued that the award should have been vacated pursuant to R.C. 2711.11(B), which permits a court to modify an arbitrator's award when the arbitrator exceeds his jurisdiction by ruling on issues not submitted for arbitration by the parties. Motor Wheel insists that the entire record of this case, including the arguments presented at the arbitration hearing, indicates that the parties submitted only the issues of (1) whether certain asbestos and PCBs fall within the coverage of the environmental indemnity under the purchase agreement, and (2) whether certain expenses already incurred by Motor Wheel for the removal and/or disposal of asbestos and PCBs were indemnible. Thus, Motor Wheel asserts that the issue of the applicability of Section 15.1(e) of the purchase agreement to the removal and/or disposal of asbestos and PCB items should not have been decided by the arbitrator. For the same reason, Motor Wheel also argues that the common pleas court should have vacated the award pursuant to R.C. 2711.10(D), which permits a court to vacate an arbitration award which does not "draw its essence" from the terms of the agreement at issue. See *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

In determining the scope of an arbitration submission agreement, courts should consider, *inter alia*, the agreement itself, any correspondence between the parties, any written submissions to the arbitrator and arguments during arbitration to be relevant. *Kroger Co. v. Teamsters Local No. 661* (C.A. 6, 1967), 380 F.2d 728, 731–732; *Oil, Chem. & Atomic Workers Local No. 2–477 v. Continental Oil Co.* (C.A.10, 1975), 524 F.2d 1048, 1050.

---

4. Motor Wheel raises the same arguments in this appeal.

In this case, the common pleas court had before it, as does this court, *inter alia,* the purchase agreement, the submission agreement, the specification of issues, the arbitration briefs of both parties, the arbitrator's opinion and award, the brief of Motor Wheel requesting reconsideration, Goodyear's brief in opposition to the request for reconsideration and the arbitrator's opinion on reconsideration.

■ As Goodyear points out, the parties' submission agreement phrased the issue of whether the environmental indemnity covered the removal and disposal of asbestos and PCB items as a question of "[t]he *extent* to which Goodyear is required to Reimburse Motor Wheel for asbestos and/or PCB cleanup, removal and/or other such related costs and expenses under the Purchase Agreement." (Emphasis added.) The American Heritage Dictionary (1983) 249 defines "extent" as "[t]he area or distance over which something extends; size; * * * [t]he range or degree to which something extends; scope." Having agreed to such a broadly worded submission to the arbitrator, Motor Wheel is hard-pressed to complain that the opinion and award determining Goodyear's obligation to indemnify Motor Wheel for the removal/disposal of PCB and asbestos items were too broad.

Further, the parties' specification of issues did not narrow the breadth of the submission agreement. Each party's specification of issues posed the issue for the arbitrator as a question of whether the purchase agreement " * * * [o]bligates Goodyear to indemnify Motor Wheel for the cost of cleanup, removal and lawful disposal of all asbestos-containing materials and polychlorinated byphenyls [*sic*] that were located on the Premises or the Owned Real Property on December 30, 1986, including all asbestos and PCBs that were not on that date, in violation of any environmental laws or subject to any immediate regulatory requirement of removal. In this arbitration, Motor Wheel seeks a declaration that the Purchase Agreement imposes such an obligation on Goodyear. Goodyear seeks a declaration that the Purchase Agreement imposes no such obligation."

Similarly, in their arbitration briefs, the parties each raised the issue of Goodyear's continuing liability for indemnification of asbestos and PCB items as an issue to be determined by the arbitrator. Goodyear framed the issue in its brief as follows:

"The first issue is whether, under the Agreement, Goodyear is obligated to reimburse Motor Wheel for *future* expenses it may incur in removing and disposing of equipment or materials containing PCBs or asbestos, despite the fact that the equipment or materials at the time of closing were perfectly functional and in use, and not in violation of any law or subject to a regulatory response requirement."

Likewise, in its arbitration brief, Motor Wheel phrased the issue as follows:

"Motor Wheel also seeks a binding declaration of Goodyear's continuing obligation under the Purchase Agreement with respect to those asbestos and PCB removal and disposal costs yet to be incurred. Because Goodyear has clearly indicated that it would refuse payment of these obligations, this issue is ripe for declaratory relief."

■ Nor are we convinced, as argued by Motor Wheel, that evidence presented and arguments made at the arbitration hearing support its contentions in this appeal. Nothing that transpired at the arbitration hearing has any influence on this court's conclusion that the trial court appropriately denied the petition to modify the arbitration award. The parties did not provide the common pleas court, or this court for that matter, with a verbatim transcript or other complete record of the evidence and arguments presented at the arbitration hearing. As a result, we must presume regularity of the arbitration proceedings and the resulting arbitration award. *Marra Constructors v. Cleveland Metroparks Sys.* (1993), 82 Ohio App.3d 557, 563, 612 N.E.2d 806, 809; *Cleveland Asbestos Abatement v. Parma City School Dist.* (Jan. 30, 1992), Cuyahoga App. No. 59706, unreported, 1992 WL 14398.

Finally, we are not convinced that the fact that the arbitrator directed Goodyear to reimburse Motor Wheel for the twelve specific claims, nine of which were allegedly incurred beyond the dates specified in Section 15.1(e), compels a different conclusion. There is nothing in the record indicating one way or the other that Goodyear and Motor Wheel had reached a separate agreement as to each of these nine invoices or that Goodyear waived any objection to the timeliness of the notice as to these invoices. Absent a complete record of the arbitration proceedings, we will again presume regularity. *Marra Constructors v. Cleveland Metroparks Sys., supra; Cleveland Asbestos Abatement v. Parma City School Dist., supra.*

Thus, given the state of the record, we see no basis upon which this appellate court can conclude that the common pleas court's judgment overruling the petition to vacate the arbitration award was an abuse of discretion.

Nor can we say that a different result is compelled under a *de novo* standard of review. Motor Wheel has failed to prove it was entitled to a vacation or modification or the arbitration award pursuant to R.C. Chapter 2711.

For the aforementioned reasons, Motor Wheel's sole assignment of error challenging the trial court's judgment overruling the petition to modify or vacate

the arbitration award on the grounds set forth in either R.C. 2711.10(D) or 2711.11(B) is overruled.

*Judgment affirmed.*

PATTON, P.J., and WEAVER, J., concur.