INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 92, Appellee,

v.

CITY OF TOLEDO, Appellant.

[Cite as *Internatl. Assn. of Firefighters Local 92 v. Toledo* (1999), 136 Ohio App.3d 56.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–99–1113.

Decided Dec. 23, 1999.

57

58

*Ted Iorio, Christine A. Reardon* and *Donato Iorio,* for appellee.

*Barbara Herring,* City of Toledo Law Director, and *James G. Burkhardt,* Senior Attorney, for appellant.

HANDWORK, Presiding Judge.

This case is an accelerated appeal from the March 8, 1999 judgment of the Lucas County Court of Common Pleas. The court denied the motion of appellant, the city of Toledo, to vacate an arbitration award sustaining a grievance filed by appellee, the International Association of Firefighters Local 92 ("union"). The court granted the motion of the union to confirm the award and thereby end the inspection of city fire hydrants by firefighters represented by the union. On appeal, the city asserts the following assignments of error:

"I. The court below erred by determining that the arbitrator had not exceeded his powers.

"II. The court below erred in determining that the State Employment Relations Board did not have exclusive jurisdiction over the issues raised."

The undisputed facts in this case can be summarized as follows. In 1997, the mayor of the city was upset by media coverage of the safety concerns arising from the fact that city fire hydrants were not being properly maintained. The water department complained that it could not keep up with its twice yearly

inspections because of the vacancies within the department. The mayor, however, had previously vowed not to fill these vacancies because he believed that the current employees were not productive workers. Therefore, city administrators decided to have the fire department perform a less extensive inspection of the hydrants twice a year to ensure that the hydrants were functioning. Fire department administrators later justified implementing the Hydrant Familiarization and Verification Program on the ground that it was part of the job of a firefighter to work with hydrants, know their location, and know that they worked. The program was also classified as a new rule about prefire planning that was already part of the bargaining agreement. The union opposed the new program and filed a grievance. Their grievance was repeatedly denied and the issue was eventually presented for arbitration pursuant to the collective bargaining agreement. The arbitrator ruled that the program was outside the scope of a firefighter's duties and had not been properly negotiated. Therefore, the arbitrator sustained the grievance. On a motion to vacate or confirm the arbitrator's award, the court of common pleas upheld the arbitrator's award. The city then appealed the decision of the court of common pleas to this appellate court pursuant to R.C. 2711.10.

■ The Ohio Supreme Court has not expressly set forth the appellate court's standard of review in this type of case. See *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 52–53, 647 N.E.2d 844, 848–849. However, upon an examination of the Ohio Supreme Court cases, it appears that the court has applied a *de novo* standard of review. See, *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 690 N.E.2d 1262.

■ In its first assignment of error, the city argues that the arbitrator exceeded his powers by ruling on an action that was not subject to arbitration. John Coleman, a Battalion Chief for the fire department, testified that the hydrant program was a new rule or procedure under Sec. 2125.49 of the collective bargaining agreement. Therefore, the city argues that the union was limited in its ability to seek review of its grievance and could not seek arbitration.

Sec. 2125.49 provides that:

"Written orders shall be issued to provide direction for new Rules, Department Operations, programs, and Procedures. Such Rules and Orders shall be submitted to the Bargaining Unit seven (7) calendar days before they are to take effect. They shall be subject to the grievance procedure provided herein up to the third Step of such procedure—to the Office of the Safety Director. Decision of the Safety Director relative to Rule or Procedure changes appealed under the provisions of this section shall not be subject to arbitration. A copy of the Rule

Book and all subsequent changes shall be provided to each Firefighter by the City.

"Verbal orders shall continue to be used in emergency situations and also in those non-emergency situations where such orders are issued for the purpose of carrying out preestablished policies of the Department. In the event certain verbal orders are causing confusion and thereby leading to non-uniformity in Department Operations, such orders, when called to the attention of the Administration, shall be reduced to writing for clarification."

The issue of whether this grievance could be arbitrated was first raised by the city during the hearing before the arbitrator. The arbitrator found that the power to arbitrate was within his powers pursuant to Sec. 2125.15 of the collective bargaining agreement, which defines a grievance as "any controversy, complaint, misunderstanding or dispute arising from the interpretation, application or observance of any of the provisions herein or any supplement hereto.* * *." The arbitrator also held that the city cannot rely upon Sec. 2125.49 of the collective bargaining agreement in this manner or it could always submit proposed actions to the bargaining unit prior to their implementation and thereby avoid the entire grievance process required under the collective bargaining agreement.

The court of common pleas was presented with this same issue and concluded that this issue was subject to arbitration. Therefore, the court found that the parties were bound to accept the arbitrator's interpretation of the contract. Furthermore, the court held that the failure of the city to assert this issue in a timely manner estopped it from asserting that the underlying grievance could be submitted to arbitration.

On appeal, the city cites to our decision in the case of *In re Port Clinton and Scagnetti Construction Company* (Jan. 12, 1990), Ottawa App. No. OT–88–47, unreported, 1990 WL 1355, to support its contention that the issue of whether the underlying grievance could be submitted to arbitration was an issue for the court to determine. The city fails to note, however, that in *Port Clinton*, the contract between the parties did not confer the power to determine the scope of the arbitrator's power to the arbitrator. In the case before us, Sec. 2125.15 of the collective bargaining agreement clearly defines a grievance as including issues regarding the interpretation of the collective bargaining agreement provisions. Therefore, any issues regarding the grievance process are also subject to arbitration. The city has not established that the arbitrator's decision to arbitrate the underlying grievance was improper under R.C. 2711.10.

▮▮ Next, the city contends that the arbitrator exceeded his powers by assuming and relying upon facts not in evidence. This is a factual issue, which is not reviewable by the courts. When agreeing to arbitration, the parties agree to

accept the arbitrator's award even if it results in a legally or factually inaccurate decision. *Motor Wheel Corp. v. Goodyear Tire & Rubber Co., supra* at 52, 647 N.E.2d at 848–849; *Geist v. Ohio Dept. of Commerce* (1992), 78 Ohio App.3d 404, 408, 604 N.E.2d 1372, 1374–1375; and *Endicott v. Johrendt* (Apr. 30, 1998), Franklin App. No. 97APE08–1122, unreported, 1998 WL 212770. Therefore, the common pleas court must simply accept the factual findings of the arbitrator and enforce the arbitrator's decision unless one of the statutory reasons for not doing so is established. *Goodyear v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 522, 71 O.O.2d 509, 330 N.E.2d 703.

R.C. 2711.10(A) through (D) provide that the arbitration award can be vacated if it was obtained "by corruption, fraud, or undue means," the arbitrator was evidently partial or corrupted, the arbitrators were guilty of misconduct that prejudiced the parties, or "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." In this case, the city asserts only that the arbitrator exceeded his powers.

██ When determining whether the arbitrator exceeded his powers, the reviewing court must confirm the arbitration award if it finds that "the arbitrator's award draws its essence from the collective bargaining agreement and it is not unlawful, arbitrary or capricious,* * *." *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 690 N.E.2d 1262, syllabus, and *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph two of the syllabus, superseded by statute on other grounds as noted in *Cincinnati v. Ohio Council 8, Am. Federation of State, Cty., and Mun. Emp.* (1991), 61 Ohio St.3d 658, 576 N.E.2d 745. The test for determining whether an arbitration award departs from the essence of the agreement is whether: "(1) an award conflicts with express terms of the collective bargaining agreement; (2) an award imposes additional requirements that are not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement." (Citations omitted.) *Cement Divisions, Natl. Gypsum Co. v. United Steelworkers of Am.* (C.A.6, 1986), 793 F.2d 759, 766. See, also, *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 183, 572 N.E.2d 71, 76–77 (that applied two parts of this test).

The city asserts that the arbitrator's award in this case departs from the essence of the agreement for five reasons. First, it argues that the grievance was

not subject to arbitration under the collective bargaining agreement and that it is within the exclusive jurisdiction of the State Employment Relations Board ("SERB").

We have already discussed the first part of this argument and held that the arbitrator had the power to determine what issues are subject to arbitration. The remaining issue is whether this grievance was within the sole jurisdiction of the SERB and whether the arbitrator was bound by the SERB's interpretation of the collective bargaining agreement. The city asserts this same argument under its second assignment of error as well.

R.C. 4117.08(A) and R.C. 4117.11(A)(5) provide that the public employer's refusal to collectively bargain with the union representative concerning terms and conditions of employment is an unfair labor practice. Resolution of alleged unfair labor practices are within the exclusive jurisdiction of the SERB. R.C. 4117.12(A). However, the issue of whether the collective bargaining agreement has been violated is a matter to be resolved by arbitration.

The trial court ruled that the actions of the city could be the basis for both an unfair labor practice and an arbitrable grievance. The court relied upon our decision in *Toledo Police Patrolman's Assn., Local 10 IUPA v. Toledo* (1998), 127 Ohio App.3d 450, 713 N.E.2d 78.

On appeal, the city contends that this case is distinguishable from *Patrolman's* solely because an unfair labor practice claim had been filed with the SERB and rejected in the case before us. We disagree that this fact is significant. The holding in *Patrolman's* was that the actions of the city gave rise to two claims: an unfair labor practice, which is within the exclusive jurisdiction of the SERB, and an arbitrable grievance. The same type of situation arises in this case as well. While appellees filed an unfair labor practice charge, they could also seek to arbitrate the grievance for violating the collective bargaining agreement.

The city also argues that the arbitrator was bound by the SERB ruling that the hydrant inspections are part of the firefighters' class specification. We disagree. The arbitrator has the power to interpret the terms of the contract. He is not bound by the findings of the SERB.

The remaining four reasons the city asserts for concluding that the arbitrator's award departs from the essence of the agreement are: (1) it imposed a duty to bargain upon the parties even though the city was acting properly under Sec. 2125.91 and 2125.52, (2) the plain language of the collective bargaining agreement allows the city to operate and control the department of fire and rescue

operations, including the imposition of a requirement that the firefighters inspect hydrants, (3) it is not based upon any provisions in the collective bargaining agreement, and that (4) it was based on general considerations of fairness and equity (that this issue should have been negotiated during the on-going collective bargaining negotiations) rather than the terms of the agreement. More concisely stated, the city argues that the arbitrator misinterpreted the terms of the collective bargaining agreement and relied solely upon general principles of equity to justify his decision.

 Prior to the arbitration hearing, there is no indication as to what portion of the collective bargaining agreement the city relied upon to institute the hydrant inspection program. At the hearing, Coleman testified that the program was instituted as a new rule or order under Sec. 2125.49 and as a prefire planning program under Sec. 2125.52 of the collective bargaining agreement. He also testified that the program was appropriate under Rules 35 and 36 of the Operations Manual, which require every firefighter to know where the hydrants are and to report anything that would affect the fire department's ability to respond to an emergency call. Meanwhile, Margaret Wallace, a personnel manager, testified that it is within a firefighter's job duty to check hydrants because a firefighter is responsible for maintaining equipment and apparatus. She includes hydrants under the term "equipment." The city also relied upon Sec. 2125.91 of the collective bargaining agreement, which provides that except for those rights and duties covered by the collective bargaining agreement, the city retains the right and duty to operate and direct the department of fire and rescue.

The arbitrator considered all of the testimony and found that hydrant inspections have not historically been a duty of the firefighters for nearly twenty-five years. He also found that Sec. 2125.52 involves only inspections of buildings. Therefore, he concluded that the collective bargaining agreement's generalized description of a firefighter's duties could not have included hydrant inspections. Instead, he found that the evidence clearly indicates that the water department is responsible for this type of work. The arbitrator also found that the city was reassigning the hydrant inspection work from the water department to the firefighters outside of the collective bargaining process in violation of the collective bargaining agreement.

Upon examination of the collective bargaining agreement, we find that the arbitrator's decision is rationally based upon the terms of the collective bargaining agreement and not upon his own considerations of equity. Therefore, we find that the decision derives its essence from the collective bargaining agreement and the arbitrator did not exceed his powers.

The city also argues that the arbitrator cannot rely upon the recognition clause of the collective bargaining agreement to establish a contract violation. Sec. 2125.01 of the collective bargaining agreement provides that the city recognizes the union "as the sole and exclusive representative of all employees of the Department of Fire and Rescue Operations * * *, for purposes of bargaining with respect to wages, hours of work, and working conditions." The city argues that the arbitrator interpreted the recognition clause too broadly when he found that it was violated simply by the city's assignment of certain duties to the firefighters without bargaining with the union.

We find that this argument does not have merit. The essence of the recognition clause is that the city must bargain with the union over certain matters. The arbitrator did not go beyond the language of the recognition clause when he interpreted it as requiring that any changes in the firefighters' job specifications must be negotiated. We agree with the arbitrator that any change in the firefighters' work duties would affect their wages and, therefore, must be negotiated.

Accordingly, we find both the city's first and second assignments of error not well taken.

Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.

*Judgment affirmed.*

MELVIN L. RESNICK and PIETRYKOWSKI, JJ., concur.