DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas, in which the trial court confirmed an arbitration award in a case involving a contract dispute.
 {¶ 2} On appeal appellants, Kent T. Weickert, Michael J. Weickert, Thomas J. Weickert and Weickert Agencies, Inc. ("Weickerts"), set forth the following two assignments of error:
 {¶ 3} "Assignment of error no. 1
 {¶ 4} "The trial court committed an err [sic] at law where it failed to vacate the award of the arbitrator.
 {¶ 5} "Assignment of error no. 2
 {¶ 6} "The trial court committed an abuse of discretion where it failed to vacate the award of the arbitrator."
 {¶ 7} This case arises out of an ongoing dispute involving the sale of an insurance business by appellees, Lee and Sharon Bowden ("Bowdens"), to the Weickerts in June 1998. The purchase agreement contained detailed provisions for the sale of the business, including a formula to establish the purchase price, assignment of rights to the Bowden Agency name, telephone number and post office box, the employment of Lee Bowden by the Weickerts after the sale of the business, and the handling of present and future commissions and accounts. The contract exempted the Bowdens' bail bond business, which Lee Bowden operated from the business's location at 908 Croghan Street, in Fremont, Ohio. The purchase contract also contained a non-compete clause, in which Lee Bowden promised not to compete with the Weickerts in the insurance business within a 30 mile radius of Fremont for a period of 10 years.
 {¶ 8} Soon after the contract was signed, a dispute arose between the parties as to the execution of its terms. In June 1999, the Bowdens filed a complaint in the Sandusky County Court of Common Pleas, in which they alleged that the Weickerts failed to make payments to and on behalf of the Bowdens as required by the purchase contract. The complaint also alleged that the Weickerts were interfering with the operation of the bail bond business, and that the Weickerts destroyed or otherwise denied access to the Bowdens' "personal" business records.
 {¶ 9} Pursuant to the terms of the purchase contract, the trial court referred the case to arbitration, and an arbitrator was chosen.[1]
The arbitrator, however, instead of proceeding to arbitration, attempted to mediate the dispute.
 {¶ 10} After two days of mediation, the parties signed a handwritten mediation document, in which they expressed their intent to reach a settlement. In that document, they specified a purchase price of $185,000 for the business, with a $160,000 down payment, and a remaining balance of $25,000 to be paid in yearly installments of $5,000. The handwritten mediation document also contained a "non-compete/non-disparagement clause," in which the Bowdens agreed not to compete with the Weickerts in the insurance business within a 30 mile radius of Fremont for a period of 5 years. In addition, the document stated that Lee Bowden agreed "not to be licensed with Cincinnati Insurance Co., and agrees in addition that he will not join as agent or solicit another insurance agency that competes with Weickerts or solicits Weickerts' clients."
 {¶ 11} The handwritten mediation document was signed with the belief that a final settlement agreement would be "fleshed out" in further negotiations and finalized in a more complete form. Eventually, however, it became apparent that the parties were unable to "flesh out" a final settlement agreement to their mutual satisfaction. On April 27, 2000, the Bowdens filed a motion to have the case returned to arbitration. On September 29, 2000, the trial court granted the Bowdens' request, and ordered the case sent back to arbitration, so that the arbitrator could "determine what issues remain to be resolved and to conduct proceedings in order to make any and all necessary rulings concerning said issues." A timely notice of appeal was filed.
 {¶ 12} On October 6, 2000, the Weickerts filed a motion to dismiss the appeal, on the grounds that they paid $160,000 of the purchase price to the Bowdens in reliance on the terms expressed in the handwritten mediation document, and that all other disputes relating to the purchase contract were fully resolved by that agreement. On December 15, 2000, the Weickerts' motion to dismiss the appeal was denied. On May 18, 2001, this court issued a decision in which we found that :
 {¶ 13} "the issues that have arisen as a result of the parties' failed attempts to reach a settlement are the equivalent of disputes between the parties pertaining to the purchase agreement." Bowden v.Weickert (May 18, 2001), 6th Dist. App. No. S-00-039 ("Bowden v. WeickertI"). Accordingly, we upheld the trial court's referral of the case back to arbitration.
 {¶ 14} On October 8, 2001, an arbitration hearing was held by the same individual who previously had been named as arbitrator, and who attempted to mediate the parties' disputes.[2] At the hearing, the Weickerts once again argued that the handwritten mediation document expressed the complete agreement of the parties, and no outstanding issues remained to be arbitrated. In contrast, the Bowdens argued that issues remained as to: (1) the amount of interest to be paid on the outstanding balance due for the insurance business; (2) whether the Bowdens had the right to retain ownership of the bail bond business; (3) whether the non-compete agreement applied only to the business entity known as "Bowden Insurance Company"; (4) the duration of Lee Bowden's non-licensure agreement with Cincinnati Insurance Company; and (5) the return of certain records to the Bowdens.
 {¶ 15} On December 3, 2001, the arbitrator issued a decision, in which he recognized that the Weickerts paid the Bowden's $160,000 after the handwritten mediation document was signed, made the first installment of $5,000 on the remaining balance of $25,000, and "operated the Bowden insurance agency as their own, without objection from the Bowdens." Thereafter, the arbitrator rejected the Weickerts's assertion that the parties' disputes were resolved in mediation, and went on to decide those issues identified by the Bowdens, as follows.
 {¶ 16} As to the issue of interest, the arbitrator found that the handwritten mediation document contained no provision for the payment of interest on the outstanding balance of $25,000. However, he took notice that the Weickerts' proposed draft of a final agreement contained a provision for the payment of interest. Accordingly, the Weickerts were ordered to pay the balance due of $25,000 "at the rate of $5,000.00 annually, beginning on October 31, 2000, plus seven (7) per cent simple interest."
 {¶ 17} As to the sale of the bail bond business, the arbitrator noted that, while the original purchase contract contained a provision exempting the bail bond business from the sale of the insurance business, the handwritten mediation document contained no such provision. Accordingly, he found that the parties did not agree to exempt the bail bond business from the sale of the insurance business.
 {¶ 18} As to the "non-compete/non-disparagement clause," the arbitrator found that two issues remained to be decided: (1) whether the clause applied only to the entity known as the "Bowden Insurance Agency"; and (2) the length of time for which Lee Bowden agreed not to compete with the Weickerts in the insurance business as a licensed agent of the Cincinnati Insurance Company.
 {¶ 19} As to the first issue, the arbitrator found that, pursuant to the terms of the original purchase contract, the Weickerts were allowed to form a separate business entity known as Weickert Agency, Inc., and assign all rights under the contract to that entity. He noted, however, that such a provision was not included in the handwritten mediation document. Nevertheless, the arbitrator stated that such a provision is common in sales contracts "and would have, without a doubt, been a part of a sales contract executed as a result of the mediation." Accordingly, he found that Lee Bowden is prohibited from competing with both the Bowden Insurance Agency and the newly-formed Weickert Agency, Inc.
 {¶ 20} As to the second issue, the arbitrator noted that the second paragraph of the handwritten mediation document stated that the Bowdens would not compete with the Weickerts within a 30 mile radius of Fremont, Ohio, for a period of 5 years. The document further provided that Lee Bowden would not "be licensed with Cincinnati Insurance Co., and agrees, in addition, that he will not join, as agent or solicitor, another insurance agency that competes with the Weickerts or solicits Weickert's clients." The document was silent as to the duration of the "non-license" provision. Nevertheless, the arbitrator concluded that it would be unreasonable to require a lifetime duration on the "non-license" provision. Accordingly, he found that "the Bowdens' agreement not to be licensed with Cincinnati Insurance Agency is for a duration of five (5) years."
 {¶ 21} Finally, neither the original purchase contract nor the handwritten mediation document mentioned the Bowdens' personal records. However, the arbitrator found that, because "the parties never agreed that Bowden's personal records were part of the sale of the Bowden's [sic] insurance business * * * [the records] remain the Bowdens' property and they are entitled to possession." Accordingly, he ordered the Weickerts to return to the Bowdens their personal records, canceled checks, check stubs and accounts payable records.
 {¶ 22} On December 21, 2001, the Bowdens filed a motion to confirm the arbitration award, pursuant to R.C. 2711.09. On December 27, 2001, the Weickerts filed a motion to vacate the award, in which they argued that the arbitrator exceeded his authority "by attempting to modify the settlement agreement entered into by the parties, which is beyond the scope of the instructions given by this Court and beyond the scope of the arbitration agreement." Thereafter, both parties submitted briefs to the trial court and, on June 20, 2002, the trial court summarily affirmed the arbitration award. On July 17, 2002, a timely notice of appeal was filed.
 {¶ 23} The Weickerts argue in support of their two assignments of error that the trial court erred by not vacating the arbitration award pursuant to R.C. 2711.10.
 {¶ 24} Generally, arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. Findlay City School Dist. Bd. of Edn. v. Findlay Edu. Assn.
(1990), 49 Ohio St.3d 129, 132, reversed on other grounds, Cincinnati v.Ohio Council 8, AFSCME, 61 Ohio St.3d 658. R.C. 2711.10 sets forth narrow grounds upon which a court of common pleas may review an arbitration award. The relevant statutory provision in this case is R.C. 2711.10(D), which provides that the court of common pleas shall vacate an award upon the application of any party to the arbitration if: "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
 {¶ 25} Id.; Goodyear Tire Rubber Co. v. Local Union No. 200
(1975), 42 Ohio St.2d 516, 520.
 {¶ 26} On appeal, our review is confined "to an evaluation of the confirmation order of the common pleas court, and we cannot review the substantive merits of the award absent evidence of material mistakes or extensive impropriety." Brumm v. McDonald Co. Securities, Inc.
(1992), 78 Ohio App.3d 96, 104, citing Oil, Chemical Atomic WorkersInternatl. Union, AFL-CIO, Local 7-629 v. RMI Co. (1987),41 Ohio App.3d 16, 20. The standard of review on appeal is whether the lower court erred as a matter of law in confirming the award. Bd. ofTrustees v. Frat. Order of Police (2001), 146 Ohio App.3d 456, 459, citing McFaul v. UAW Region 2 (1998), 130 Ohio App.3d 111, 115.
 {¶ 27} The policy underlying such a narrow scope of review for arbitration awards:
 {¶ 28} "comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of `junior varsity trial courts' offering the losing party complete and rigorous de novo review. * * *'" Motor Wheel Corp. v.Goodyear Tire Rubber Co. (1994), 98 Ohio App.3d 45, 52 (Other citation omitted).
 {¶ 29} Generally, an arbitrator will not be found to have exceeded his authority, so long as the award "draws its essence" from the underlying contract. Findlay, supra, at 132; Goodyear v. Local Union No.200 (1975), 42 Ohio St.2d 516. "`An arbitrator's award draws its essence from a[n] * * * agreement when there is a rational nexus between the agreement and award, and where the award is not arbitrary, capricious or unlawful.'" Id., quoting Mahoning Cty. Bd. of Mental Retardation, supra, at 83-84.
 {¶ 30} The Weickerts argue that the arbitrator exceeded his authority in this case by considering issues that were beyond the scope of the original purchase agreement, and by modifying the terms of the handwritten mediation document by providing for the payment of interest and reducing the duration of the non-compete provision to 5 years. Our earlier decision to return this case to arbitration was predicated on our finding that the parties' attempt to reach a settlement through mediation had failed. See Bowden v. Weickert I, supra. Accordingly, the Weickerts' argument is in error to the extent that it assumes the finality of the terms expressed in the handwritten mediation document. However, we agree with the Weickerts that the arbitrator exceeded his authority in this case.
 {¶ 31} We begin by analyzing the distinction between arbitration and mediation. The term "arbitration" has been defined as the "'* * * hearing and determining of a case between parties in controversy by a person or persons chosen by the parties * * * instead of by a judicial tribunal * * *.'" Ohio Council 8, AFSCME v. Ohio Dept of Mental Health
(1984), 9 Ohio St.3d 139, 142, quoting Webster's Third New International Dictionary (1966). Arbitration is encouraged in Ohio because it provides "parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." Findlay, supra, at 131, citing Mahoning Cty. Bd. of MentalRetardation v. Mahoning Cty. TMR Edn. Assn (1986), 22 Ohio St.3d 80, 84.
 {¶ 32} In contrast, mediation is, by definition, "a procedure by which the parties negotiate a resolution to their dispute with the assistance of a third party mediator. If the parties do not reach an agreement, the mediation process is at an end; no resolution may be imposed on the parties." Oliver Design Group v. Westside DeutscherFrauen-Verein, d.b.a. The Altenheim (Dec. 19, 2002), 8th Dist. App. No. 81120, 2002-Ohio-7066, citing Ohio Council 8, AFSCME, supra, at 142-43 (quoting Domke, The Law and Practice of Commercial Arbitration (1968), Section 1.02, at page 3). In the event that an agreement is reached through mediation, it is as enforceable as any contractual agreement.Forysiak v. Laird Marine Mfg. (Oct. 19, 2001) 6th Dist. App. No. OT-00-049, citing Stark Brinkr, Inc. v. United Riggers, Inc. (Feb. 22, 2000), 5th Dist. App. No. 1999CA00179.
 {¶ 33} In addition to the above, R.C. 2317.023(B) states that a "mediation communication is confidential." A "mediation communication" is defined as "a communication made in the course of and relating to the subject matter of a mediation." R.C. 2317.023(A)(2). R.C. 2317.023
further states that mediation communications shall not be disclosed in any other proceeding unless all parties and the mediator consent to the disclosure. R.C. 2317.023(C)(1).
 {¶ 34} In this case, the parties agreed in the original purchase agreement to arbitrate any dispute arising thereunder. However, when disputes arose, and the case was referred to arbitration, the parties postponed arbitration proceedings and attempted to mediate those disputes. The record contains no evidence that an agreement was made to abandon arbitration in favor of mediation proceedings. Thereafter, when the mediation attempt failed, the trial court properly ordered the case returned to arbitration.
 {¶ 35} The mediation-followed-by-arbitration proceeding engaged in by the parties in this case is sometimes referred to as a combined, or hybrid, "med-arb" proceeding. Such proceedings, when properly executed, are innovative and creative ways to further the purpose of alternative dispute resolution. However, given the confidential nature of mediation, the high degree of deference enjoyed by an arbitrator, and the high probability that both proceedings are likely to be employed before their disputes are resolved, it is essential that the parties agree to certain ground rules at the outset. At a minimum, the record must include clear evidence that the parties have agreed to engage in a med-arb process, by allowing a court-appointed arbitrator to function as the mediator of their dispute. The record must also contain: (1) evidence that the parties are aware that the mediator will function as an arbitrator if the mediation attempt fails; (2) a written stipulation as to the agreed method of submitting their disputed factual issues to an arbitrator if the mediation fails; and (3) evidence of whether the parties agree to waive the confidentiality requirements imposed on the mediation process by R.C. 2317.023 in the event that their disputes are later arbitrated.
 {¶ 36} Nothing in the record of this case indicates that the Bowdens and the Weickerts agreed to be bound by the terms expressed in the handwritten mediation document if a final settlement agreement was not reached. Accordingly, when the case was referred back to arbitration after the parties' attempt to reach a settlement through mediation failed, the arbitrator had a duty to remain impartial, and to protect the confidentiality of all mediation communications. In spite of this duty, it is undisputed that the arbitrator relied on information obtained through his role as mediator when he fashioned the arbitration award. In so doing, he ignored our direction, on remand, to determine the issues that were to be resolved under the original purchase contract, and to "conduct proceedings in order to make any and all necessary rulings concerning said issues." Bowden v. Weickert I, supra. In addition, to the extent that his decision included confidential information obtained through the mediation process, the arbitrator violated the mandates set forth in R.C. 2317.023.
 {¶ 37} The arbitrator's failure to adhere to statutory requirements in this case has produced a result that is precisely what alternative dispute resolution is designed to prevent. None of the goals of alternative dispute resolution has been served. Multiple proceedings have been commenced in the trial court, and in this court, in addition to the mediation and arbitration proceedings. Instead of resolving the parties' disputes, these proceedings have prolonged the process of selling an insurance business for over three years, resulting in expenditures of time, effort, and money by all concerned, with no final resolution yet in sight.
 {¶ 38} This court has reviewed the entire record of proceedings in this case and, upon consideration thereof and the law, finds that the arbitrator's award was based, at least in part, on the terms of the parties' failed attempt at a mediated settlement, as set forth in the handwritten mediation document. Such a determination was outside the arbitrator's jurisdiction. It therefore had no "rational nexus" to the original purchase contract that authorized an arbitration of any dispute arising thereunder. In addition, in the absence of an explicit agreement regarding the confidentiality of statements made during mediation, the use of the same individual as mediator and, later, as arbitrator, has rendered the arbitrator's decision "arbitrary and capricious" on its face.
 {¶ 39} For the foregoing reasons, we find that the arbitrator exceeded and so imperfectly executed his powers that a mutual, final, and definite award upon the subject matter submitted was not made. Accordingly, the trial court erred as a matter of law by not vacating the arbitrator's award pursuant to R.C. 2711.10(D). Appellant's two assignments of error are well-taken.
 {¶ 40} The judgment of the Sandusky County Court of Common Pleas is hereby reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Specifically, the trial court is ordered to refer this case back to arbitration in accordance with the terms of the original purchase contract. The arbitrator shall take into account that the Weickerts paid $160,000 to the Bowdens, and that the Weickerts have been running the insurance business without objection from the Bowdens.
 {¶ 41} Court costs of these proceedings are hereby assessed to appellees.
JUDGMENT REVERSED.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Judith Ann Lanzinger, J.
[1] Paragraph 16 of the parties' original purchase contract states:
"ARBITRATION If any dispute shall occur between the parties pertaining to this Agreement or the interpretation of any provision herein, the parties agree to submit their dispute first to binding arbitration in accord with the rules of the American Arbitration Association before the [sic] resort to any court of law."
[2] The individual who functioned as both mediator and arbitrator of the parties' disputes will be referred to in this opinion as either "mediator" or "arbitrator," depending on which role he was fulfilling at the time.