[Cite as *Toledo Police Command Officers' Assn. v. Toledo*, 2014-Ohio-4119.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Toledo Police Command Officers'
Association

Court of Appeals No. L-13-1022

Trial Court No. CI0201003927

Appellee

v.

City of Toledo

**DECISION AND JUDGMENT**

Appellant

Decided:  September 19, 2014

* * * * *

Gregory T. Lodge, for appellee.

Adam Loukz, Director of Law, Michael J. Niedzielski, Chief of Labor,
and Michael A. Kyser, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal of judgments of the Lucas County Court of Common Pleas,

journalized on January 17 and 18, 2013, in a labor dispute.  The city of Toledo is

appellant.  Appellee is the Toledo Police Command Officers' Association ("TPCOA").

TPCOA is a labor organization representing approximately 135 police officers employed by the city in the ranks of Captain, Lieutenant, Sergeant, and Police Secretary.

{¶ 2} Appellant and appellee are parties to a collective bargaining agreement ("the agreement" or "CBA") that contains an arbitration clause. In this action, TPCOA has sought to compel the city to submit to binding arbitration of grievances brought under the CBA. The trial court granted TPCOA the relief sought, ordering the city to submit to binding arbitration of three grievances asserted by TPCOA against the city under the CBA. The city appeals and argues (1) that the trial court lacked jurisdiction to compel arbitration, because the dispute falls within the exclusive jurisdiction of the State Employment Relations Board ("SERB"), and (2) that the arbitration provisions of the CBA do not apply.

{¶ 3} It is undisputed that the collective bargaining agreement between the city and TPCOA was effective from January 1, 2009, to January 1, 2012, and concerned wages, hours, terms and other conditions of employment of TPCOA employees with the city. The CBA includes agreements for the city to pick-up and pay each TPCOA employee's full pension contribution amount of ten percent (Section 2109.65 of CBA) and to provide hospitalization-prescriptive drug-dental insurance at monthly premium co-pays as stated in the CBA (Section 2109.64). The CBA also includes provisions as to Wage Rates (Section 2109.75).

{¶ 4} A Letter of Understanding between the city and TPCOA, attached to the CBA provides, among other things, that the city and TPCOA on August 13, 2009, agreed

2.

to a "me too" provision under which the city agreed to "provide the TPCOA with any greater economic benefits newly provided to TFF [Toledo Firefighters] Local 92 and/or TPPA [Toledo Police Patrolmen's Association], either through settlement or impasse proceedings, including fact finding and/or conciliation."

**Toledo Municipal Ordinance 103-10**

{¶ 5} On March 30, 2010, the Toledo City Council enacted Ordinance 103-10. In the ordinance, the city declared the existence of "exigent circumstances" based upon a budgetary shortfall. The ordinance eliminated the ten percent pension pick-up set forth in the CBA and increased monthly health care contributions by TPCOA employees above those set in the CBA. The parties agree that the conduct represents a unilateral modification of the collective bargaining agreement by the city. The ordinance provided that the changes would start on April 1, 2010.

{¶ 6} After enactment of the Ordinance 103-10, TPCOA filed a grievance concerning the city's announced intent (1) to stop paying the ten percent pension pick-up required in the CBA and (2) to begin deducting additional amounts for health insurance on a monthly basis contrary to established premium copays under the CBA. TPCOA contends in the grievance that the city's actions in unilaterally modifying the terms of the CBA violate pension pick-up provisions of Section 2109.65(C) of the CBA and established premium co-pays under Section 2109.64(A)(4), as well as, the Wage Rates section of the agreement, Section 2109.75.

3.

## "Me Too" Letter of Understanding

{¶ 7} It is undisputed that on March 23, 2010, the city entered into an agreement with Toledo Firefighters Local 92 under which city agreed to maintain a pension pick-up at seven percent through the end of 2010 for Local 92 members and that the city refused to provide the same seven percent pension pick-up to TPCOA members.

{¶ 8} TPCOA filed a grievance on April 6, 2010, asserting that the city's actions violated the "me too" provisions of the Letter of Understanding by failing to offer TPCOA members the same economic package it had offered Local 92 members.

{¶ 9} Each individual member of TPCOA filed a third grievance on April 22, 2010, after TPCOA members received paychecks. Each TPCOA member contended that their paychecks were lesser in amount than required under Section 2109.75 of the CBA. Section 2109.75 of the CBA deals with wage rates.

## Unfair Labor Practice Charges

{¶ 10} TPCOA filed unfair labor practice charges with SERB against the city on or about April 29 and May 25, 2010. Copies of the charges were submitted by the city, by affidavit, in support of its motion for summary judgment that it filed in the trial court. The April 29, 2010 unfair labor practice charge alleged that the city violated the Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117 and, specifically, R.C. 4117.11(A)(1) and (5) by "unilaterally eliminating its payment of the ten percent pension pick-up for bargaining unit employees, and also unilaterally increasing bargaining unit employee contributions for health care benefits."

4.

**{¶ 11}** In the May 25, 2010 unfair labor practice charge TPCOA alleged that the city committed unfair labor practices under R.C. 4117.11(A)(1) and (A)(5) by making the unilateral changes to the CBA set forth in the April 29, 2010 charge and maintaining them despite the city's rescinding unilateral changes for other bargaining units and also for its exempt (non-represented) employees. TPCOA asserted in the unfair labor practice charge "that the only reason that there has been no similar 'restoration' for TPCOA-represented employees is because the TPCOA continues to pursue the above-referenced unfair labor practice charge [the April 29, 2010 charge] against the City, and that the charge continues to be under investigation." TPCOA asserted that the city's conduct was retaliatory and discriminatory and violated the rights of TPCOA and its members under R.C. Chapter 4117.

## Complaint

**{¶ 12}** TPCOA filed this action in the Lucas County Court of Common Pleas on May 12, 2010, in a four-count complaint. Counts One, Two, and Three of the complaint each relate to grievances asserted against the city under the CBA:

> 1. Count One of the complaint relates to a grievance filed by TPCOA on March 31, 2010, grieving the city's refusal to perform parts of the CBA concerning pension pick-up (Section 2109.65), health insurance contribution rates (Section 2109.64) and payment of specified wage rates (Section 2109.75).

5.

2.  Count Two, relates to a grievance filed by TPCOA on April 16, 2010, grieving breach of the "me too" provisions of the Letter of Understanding attached to the CBA.  Count Two of the complaint asserts that the "me too" agreement was breached in that "the City had agreed upon more favorable terms with another public safety union on an issue involving economic benefits and * * * was refusing to offer those same terms to the TPCOA."

3.  Count Three, relates to a grievance filed by TPCOA on April 26, 2010, grieving "the City's refusal to perform part of the * * * [CBA] * * * and specifically the wage section under § 2109.75."

{¶ 13} In each of the first three counts of the complaint, TPCOA alleged that the grievances were subject to arbitration under the arbitration clause of the CBA but that the city stated that it was refusing to either respond to or process the grievances, and would refuse to arbitrate the grievances.

{¶ 14} This appeal does not concern Count Four of the complaint.  The count alleged a violation of R.C. 4113.15.  The trial court granted the city's motion to dismiss that count in the trial court's judgment of January 18, 2012.  TPCOA has not appealed that dismissal.

{¶ 15} The city moved to dismiss appellee's complaint in July 2010.  As to Counts One, Two, and Three of the complaint, the city argued that the trial court lacked subject matter jurisdiction to consider the grievances at issue in those counts of the complaint.

6.

The city argued that the issues raised in the first three counts of the complaint came within the exclusive jurisdiction of SERB. In it January 18, 2012 judgment, the trial court denied the city's motion to dismiss the first three counts of the complaint. The court granted the city's motion to dismiss Count Four on other grounds.

{¶ 16} On July 13, 2010, TPCOA filed a motion to compel arbitration of the grievance underlying Count Two of the complaint. On March 12, 2012, TPCOA filed a motion for summary judgment on Counts One and Three of the complaint. In the motion, TPCOA sought an order compelling arbitration of the grievances at issue in counts One and Three of the complaint. On April 13, 2012, the city filed its opposition brief to the motion for summary judgment and its own cross-motion for summary judgment.

{¶ 17} The motions proceeded to an oral hearing on January 4, 2013. On January 17, 2013, the trial court granted both TPCOA's motion to compel arbitration as to Count Two and the motion for summary judgment as to Counts One and Three. The court denied the city's cross-motion for summary judgment. The court ordered the city "to proceed to arbitration on each of the Grievances underlying Counts One, Two, and Three of * * * [the] * * * Complaint in accordance with Section 2109.14 of the CBA."

{¶ 18} The city asserts five assignments of error on appeal:

**Assignments of Error**

1. The trial court erred as a matter of law in denying appellant city of Toledo's motion to dismiss Counts 1, 2, and 3 of appellee's complaint

7.

for lack of subject matter jurisdiction, in finding that the court did have jurisdiction to compel arbitration of a matter falling within the exclusive jurisdiction of the State Employment Relations Board.

2. The trial court erred as a matter of law in denying the city's motion to dismiss Counts 1, 2, and 3 of appellee's complaint, in rejecting the city's argument that the State Employment Relations Board has exclusive jurisdiction over the issues presented by appellee.

3. The trial court erred as a matter of law in granting appellee's motion to compel arbitration.

4. The trial court erred as a matter of law in granting appellee's motion for summary judgment in ordering the city to proceed to arbitration pursuant to the Ohio Arbitration Act, Ohio Revised Code Chapter 2711, and Section 2109.14 of the collective bargaining agreement between the parties.

5. The trial court erred as a matter of law in denying the city's motion for summary judgment in finding that the grievances underlying the appellee's complaint are subject to arbitration pursuant to Section 2109.14 of the collective bargaining agreement between the parties.

**Agreement as to Binding Nature of SERB Proceedings
On Issue of Exigent Circumstances**

{¶ 19} On appeal, TPCOA now agrees that the outcome of the R.C. 4117.11(A)(1) and (5) unfair labor practice proceedings will determine whether any viable claim exists

for claimed breach of the CBA as asserted under Counts One and Three of the complaint. The city's exigent circumstances defense is the central issue to the R.C. 4117.11(A)(1) and (5) unfair labor practice charge.

{¶ 20} While TPCOA argues that the right to binding arbitration under the CBA continues to exist, it acknowledges on appeal that should SERB (and the courts upon review of SERB's decision) ultimately rule that the city was authorized to unilaterally modify the CBA due to exigent circumstances, then the arbitrator would be obligated to accept and follow that determination in arbitration proceedings under the CBA.

{¶ 21} Should SERB proceedings ultimately determine that the city was not authorized by exigent circumstance to unilaterally modify the CBA, TPCOA contends that the claims under Counts 1 and 3 of TPCOA's complaint must proceed to binding arbitration under the CBA with the arbitrator determining appropriate remedies for violations of the CBA.

### Status of Unfair Labor Practice Charges

{¶ 22} On April 29, 2011, SERB issued its judgment in the unfair labor practice charge proceeding brought by TPCOA before it. SERB ruled in favor of the city, finding that the city "did not violate Ohio Revised Code §§ 4117.11(A)(1) and (A)(5) when it unilaterally increased the health-care premiums for members of the Toledo Police Command Officers' Association and rescinded its ten percent payment into the Toledo Police Command Officers' Association's pension fund." SERB found that immediate

9.

unilateral action by the city "was required due to exigent circumstances that were unforeseen at the time of negotiations." SERB dismissed the unfair labor practice charge with prejudice.

{¶ 23} TPCOA appealed the judgment to the Lucas County Court of Common Pleas. On April 22, 2013, the Lucas County Court of Common Pleas issued a final judgment in the appeal and reversed. *Toledo Police Command Officers' Assn. v. SERB*, Lucas C.P. No. CI11-3235 (Apr. 22, 2013). The court ordered midterm changes to the CBA rescinded and ordered a "return to the status quo ante, including providing equitable relief to Toledo Police Command Officer's Association bargaining-unit members for any losses sustained as a result of the midterm changes."

{¶ 24} The city has appealed the April 22, 2013 judgment to this court. The appeal is pending for decision of this court.

## Subject Matter Jurisdiction

{¶ 25} Under Assignments of Error Nos. 1 and 2, the city argues trial court error in failing to dismiss Counts One, Two, and Three of the complaint. Under Assignment of Error No. 1, the city argues the trial court lacked subject matter jurisdiction to compel arbitration. Under Assignment of Error No. 2, the city argues that dismissal was required because Counts One, Two, and Three of the complaint came within the exclusive jurisdiction of SERB. In Assignment of Error No. 3, the city contends that the trial court erred as a matter of law in compelling arbitration.

10.

{¶ 26} The city has argued Assignments of Error 1, 2, and 3 together and asserted one controlling proposition of law on those assignments of error: "Revised Code Chapter 4117 grants exclusive jurisdiction to the State Employment Relations Board over claims that arise from or depend on rights created by that Chapter."

{¶ 27} In *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88, ¶ 16, the Ohio Supreme Court summarized prior decisions of the court concerning the exclusive jurisdiction of SERB and procedures and remedies to uphold R.C. Chapter 4117 rights:

> "The current R.C. Chapter 4117 established a comprehensive
> framework for the resolution of public-sector labor disputes by creating a
> series of new rights and setting forth specific procedures and remedies for
> the vindication of those rights." *Id.* [*Franklin Cty. Law Enforcement Assn.*
> *v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167,
> 169, 572 N.E.2d 87 (1991).] "The State Employment Relations Board has
> exclusive jurisdiction to decide matters committed to it pursuant to R.C.
> Chapter 4117." Id. at paragraph one of the syllabus. "Exclusive jurisdiction
> to resolve unfair labor practice charges is vested in SERB in two general
> areas: (1) where one of the parties filed charges with SERB alleging an
> unfair labor practice under R.C. 4117.11 and (2) where a complaint brought
> before the common pleas court alleges conduct that constitutes an unfair
> labor practice specifically enumerated in R.C. 4117.11." *State ex rel. Ohio*

*Dept. of Mental Health v. Nadel,* 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49, ¶ 23; *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.* (1994), 70 Ohio St.3d 125, 127–128, 637 N.E.2d 878.  Therefore, "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Franklin Cty. Law Enforcement Assn.,* 59 Ohio St.3d 167, 572 N.E.2d 87, at paragraph two of the syllabus.

{¶ 28} R.C. Chapter 2711 is Ohio's Arbitration Act.  The act predates enactment of the Public Employees' Collective Bargaining Act (R.C. Chapter 4117).  "Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration."  *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15.

{¶ 29} Binding arbitration of grievances under collective bargaining agreements with respect to wages, hours, and terms and conditions of public employment is one remedy established under R.C. Chapter 4117.  Under R.C. 4117.10(A), public employers and unions, as the exclusive representatives of public employees, can agree to binding arbitration as the exclusive procedure for resolution of grievances under a CBA.  R.C. 4117.10(A).  R.C. 4117.10(A) provides:

> (A)  An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the

12.

agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure * * *.

{¶ 30} The CBA between the parties provides for binding arbitration of grievances.

{¶ 31} The Ohio Supreme Court in *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.,* 70 Ohio St.3d 125, 637 N.E.2d 878 (1994), citing R.C. 4117.10(A), held that the vesting of SERB with exclusive jurisdiction over unfair labor practices was not meant to foreclose binding arbitration of grievances in labor disputes:

> The General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11 was never meant to foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration, especially given the clear language of R.C. 4117.10(A) set forth above. *Id.* at 128.

{¶ 32} TPCOA argues that under Chapter 4117 it was presented with two available remedies under Chapter 4117 to vindicate employee rights under the collective bargaining agreement, and that it pursued both. It brought this action to compel mandatory arbitration of grievances under the collective bargaining agreement. It also filed Unfair Labor Practice Charges with SERB.

13.

{¶ 33} This court has recognized that there may be circumstances where both remedies may be pursued. *See Intl. Assn. of Firefighters, Local 92 v. Toledo*, 136 Ohio App.3d 56, 735 N.E.2d 960 (6th Dist.1999); *Toledo Police Patrolman's Assn., Local10 IUPA v. Toledo,* 127 Ohio App.3d 450, 713 N.E.2d 78 (6th Dist.1998). Citing the Ohio Supreme Court's decision in *East Cleveland Firefighters* and this court's decision in the *Intl. Assn. of Firefighters, Local 92* case, the Eighth District Court of Appeals held that binding arbitration under the collective bargaining agreement remained an available remedy despite the filing of an Unfair Labor Practice Charge. *N. Olmsted v. Internatl. Assn. of Firefighters, Local 1267*, 8th Dist. Cuyahoga Nos. 91300, 91301, and 91724, 2009-Ohio-960, ¶ 39-40.

{¶ 34} It is undisputed that the city refused to comply with the terms and conditions of the collective bargaining agreement and refused to submit to binding arbitration of grievances filed under the CBA with respect to the failure. By ordinance, the city claimed exigent circumstances authorized its refusal to honor specific obligations under the collective bargaining agreement.

{¶ 35} The city, citing the decision of State Employment Relations Board in *SERB v. Toledo City Dist. Bd. Edn.*, SERB No. 2001-05 (October 1, 2001), contends that unilateral modification of the CBA was permitted due to the existence of exigent circumstances that were unforeseen at the time of negotiations,.

{¶ 36} The city contends that the issue of whether exigent circumstances exist to permit unilateral modification of the CBA comes within the exclusive jurisdiction of

14.

SERB. TPCOA agrees that only SERB can make that determination and that the issue is beyond the authority of the arbitrator to determine in binding arbitration under Counts One and Three of the complaint to decide.

{¶ 37} As a practical matter, TPCOA's filing of the R.C. 4117.11(A)(1) and (5) unfair labor practice charge was necessary as a procedure to secure a determination by SERB of the validity of the exigent circumstances defense. The parties agree that the outcome of the R.C. 4117.11(A)(1) and (5) unfair labor practice proceedings will determine whether any viable claim exists for claimed breach of the CBA as asserted under Counts One and Three of the complaint. The city's exigent circumstances defense is the central issue to the R.C. 4117.11(A)(1) and (5) unfair labor practice charge.

{¶ 38} The city contends that the filing of the unfair labor practice charge alone acted to place exclusive jurisdiction over the dispute with SERB and preempts the remedy of binding arbitration of grievances under the CBA, even were it ultimately determined that exigent circumstances claim is without merit. Under this argument, an unproven claim of exigent circumstances alone would act to prevent binding arbitration to enforce the terms of a collective bargaining agreement.

{¶ 39} R.C. 4117.11 governs unfair labor practices. R.C. 4117.11 (A) concerns unfair labor practices by public employers. R.C. 4117.11(B) concerns unfair labor practices by employee organizations. R.C. 4117.11(C) provides where it is determined

15.

that violations of R.C. 4117.11(A) and (B) have occurred, "nothing in this division prevents any party to a collective bargaining agreement from seeking enforcement or damages for a violation thereof against the other party to the agreement."

{¶ 40} Accordingly, we conclude that should SERB (and the courts upon review of SERB's decision) ultimately rule that the city was not justified in unilaterally modifying the CBA under "exigent circumstances," TPCOA can pursue enforcement of the CBA by binding arbitration of the grievances as sought under Counts One and Three of the complaint.

{¶ 41} With respect to the claims asserted in Counts One and Three of TPCOA's complaint, we conclude that Assignments of Error Nos. 1, 2, and 3 are well-taken in part. The court reverses the trial court judgments in part and will remand this action with instructions for the trial court to modify its judgment ordering arbitration to include instructions on the limitations on the arbitrator's authority as stated in this judgment.

{¶ 42} In all other respects, we find Assignments of Error Nos. 1, 2, and 3 not well-taken. as to the claims asserted in Counts One and Three of TPCOA's complaint.

### Claims Under Count Two of the Complaint

{¶ 43} Appellant contends that each of the first three counts of the complaint fall into one of the enumerated areas in which SERB exercises exclusive jurisdiction. With respect to the claim for binding arbitration of the "me too" grievance under Count II of the complaint, we disagree.

16.

{¶ 44} Count II of the complaint seeks binding arbitration of a grievance over the alleged failure of the city to comply with the "me too' provisions of a Letter of Understanding attached to and allegedly included as a part of the CBA. The dispute under Count Two concerns an economic offer the city extended to firefighters but failed to extend to TPCOA. Count Two of the complaint alleges that under the "me too" provisions of the Letter of Understanding, the city was required to make the same offer to TPCOA. Binding arbitration under Count Two of the complaint is sought on the claimed basis of an alleged breach of the "me too" provisions of the letter of understanding alone.

{¶ 45} The claim asserted under Count II is not the subject of any unfair labor practice charge before SERB. Ordinance 103-10 declaring exigent circumstances and unilateral modification of the CBA, did not declare any unilateral modification of the "me too" provisions of the letter of understanding. The claimed breach of the "me too" agreement is not asserted as a basis for relief in TPCOA's R.C. 4117.11(A)(1) and (5) unfair labor practice charge. TPCOA's retaliation unfair labor practice charge is also not based on any claimed breach of the CBA.

{¶ 46} We agree with TPCOA that in resolving the "me too" grievance an arbitrator need not determine whether there were exigent circumstances or whether the city was justified in unilaterally changing the CBA on the basis of exigent circumstances. The "me too" grievance does not challenge the city's unilateral changes as a breach of the CBA. Rather, the grievance involves the issue of whether the city should have offered the same economic offer to TPCOA that it offered to Toledo Firefighters Local 92.

17.

{¶ 47} Accordingly, we conclude that there is no jurisdictional bar to the trial court's judgment compelling arbitration under Count II of the complaint. The claim seeks binding arbitration of the terms of the CBA as authorized by R.C. 4117.10(A).

{¶ 48} To the extent Assignments of Error Nos. 1, 2, and 3 relate to Count Two of the complaint, we find them not well-taken.

**Arbitrability**

{¶ 49} Under Assignment of Error No. 4 the city argues that the trial court erred in granting TPCOA's motion for summary judgment and ordering the city to proceed to arbitration. In Assignment of Error No. 5, the city argues that the trial court erred in denying the city's motion for summary judgment in finding that the grievances in appellant's complaint are subject to arbitration under the terms of the CBA.

{¶ 50} Under Assignment of Error No. 4, the city argues error with respect to the trial court's judgment compelling arbitration on Counts One, Two, and Three of the complaint. TPCOA's motion for summary judgment, however, was limited to grievances under counts one and three of the complaint. TPCOA filed a separate "Motion to Compel Arbitration of Count Two of the Complaint." The trial court treated both motions as motions for summary judgment. We will treat the city's Assignment of Error No. 4 as extending to claimed error in the trial court's rulings in both motions by TPCOA and extending to rulings on all three grievances.

{¶ 51} In these assignments of error, the city argues that Counts One, Two, and Three of the complaint are not subject to arbitration under the terms of the CBA. The

18.

city summarizes its arguments under the assignments of error under one proposition of law: "The arbitration provisions contained in the CBA are inapplicable because the CBA does not include a mechanism to resolve disputes constituting unfair labor practices that do not involve the interpretation or application of a contract provision."

{¶ 52} Arbitrability concerns "whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance." *Council of Smaller Ents. v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 666, 687 N.E.2d 1352 (1988), quoting *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The Ohio Supreme Court has looked to federal decisions concerning interpretation of arbitration clauses in collective bargaining agreements for general principles to be applied when considering the reach of an arbitration clause. *Id.* at 665; *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 5.

{¶ 53} In *Council of Smaller Ents v. Gates, McDonald & Co.*, the Ohio Supreme Court identified four general principles from a series of United States Supreme Court decisions to guide the analysis:

> In *AT & T Technologies, Inc. v. Communications Workers of Am.*
> (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the United States
> Supreme Court summarized four general principles, developed in prior
> decisions of that court, to be applied when considering the reach of an
> arbitration clause. The essence of these general principles, set out primarily

in the "*Steelworkers* Trilogy" ( *Steelworkers v. Am. Mfg. Co.* [1960], 363
U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Steelworkers v. Warrior & Gulf
Navigation Co.* [1960], 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409;
*Steelworkers v. Enterprise Wheel & Car Corp.* [1960], 363 U.S. 593, 80
S.Ct. 1358, 4 L.Ed.2d 1424) is pertinent to our review, and provides a
framework for our inquiry.[FN1]

FN1. The *Steelworkers Trilogy* of cases, *John Wiley & Sons*, and *AT
& T Technologies* all involved interpretation of arbitration clauses in
collective bargaining agreements.  Although the case sub judice does not
arise in the collective bargaining context, it is now clear that the general
principles discussed reach beyond labor arbitration cases.  See
*PaineWebber Inc. v. Elahi* (C.A.1, 1996), 87 F.3d 589, 594, fn. 6
(recognizing that labor arbitration precedents can apply in a nonlabor
arbitration setting).

The first principle is that "'arbitration is a matter of contract and a
party cannot be required to submit to arbitration any dispute which he has
not agreed so to submit.' * * * This axiom recognizes the fact that
arbitrators derive their authority to resolve disputes only because the parties
have agreed to submit such grievances to arbitration." *AT & T*

*Technologies,* 475 U.S. at 648-649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting *Warrior & Gulf, supra,* 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417.

The second principle is that "the question of arbitrability-whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance-is undeniably* * * an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.,* 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.*, 475 U.S. at 650, 106 S.Ct. at

1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra,* 363 U.S. at 582-588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417. *Council of Smaller Enterprises v. Gates, McDonald & Co.*, at 665-666.

### Arbitrability of the "Me Too" Grievance

{¶ 54} With respect to the "me too" provision concerned in Count Two of the complaint, the city argues first, that the Letter of Understanding is not part of the CBA and therefore not subject to CBA grievance procedures. The first of the four general principles that guide our analysis recognizes that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

{¶ 55} The court considered TPCOA's motion to compel arbitration of count two, TPCOA' motion for summary judgment on counts one and three, and the city's cross-motion for summary judgment together. The court treated the motion to compel arbitration under count two of the complaint as a motion for summary judgment. On appeal, we do the same.

{¶ 56} TPCOA filed the affidavit of Terry Stewart in support of its motion to compel arbitration of the Me Too grievance under Count Two of the complaint. In the affidavit Stewart identified himself as a Sergeant in the Toledo Police Department and as the current President of the TPCOA. Sergeant Stewart also stated that copies of the CBA and the Letter of Understanding were attached to TPCOA's complaint and that the parties reached agreement on the Letter of Understanding at the conclusion of bargaining for the

22.

current CBA. Sergeant Stewart testified in his affidavit that "[t]he parties have traditionally included letters of understanding reached during negotiations as part of collective bargaining agreements."

{¶ 57} According to Stewart, the TPCOA filed a grievance over the violation of the "me too" agreement arising from the city's negotiated agreement of March 23, 2010, with Fire Fighters Local 92.

{¶ 58} The standard of review on motions for summary judgment is de novo; that is, an appellate court applies the same standard in determining whether summary judgment should be granted as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56, to prevail on a motion for summary judgment the moving party must demonstrate:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 59} Summary judgment procedure is limited to circumstances where there is no dispute of material fact for trial:

23.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 60} Where a properly supported motion for summary judgment is made, an adverse party must respond with specific facts to establish the existence of a material issue of fact for trial. *Suder-Benore Co., Ltd v. Motorists Mut. Ins. Co.*, 6th Dist. No. L-12-1351, 2013-Ohio-3959, 995 N.E.2d 1279, ¶ 12; Civ. R. 56(E).

{¶ 61} In our view, appellant supported its motion with sufficient evidentiary materials to establish that the Letter of Understanding was treated by the parties as a part of the collective bargaining agreement and that it became appellee's burden to submit a response to the motion for summary judgment by affidavit or as otherwise setting forth "specific facts showing that there is a genuine issue for trial" on the issue. Civ.R. 56(E). Under the rule, "[i]f the party does not so respond, summary judgment, if appropriate, shall be entered against the party." *Id.*

{¶ 62} The city has not directed the court to any evidence in the record creating a dispute of material fact over the facts stated in the Stewart affidavit including the fact that the agreement for the Letter of Understanding was reached at the conclusion of

24.

bargaining on the CBA and that the parties have traditionally included letters of understanding reached during negotiations as part of the collective bargaining agreement. We have found none.

{¶ 63} We find that there was no dispute of material fact on the issue of whether the letter of understanding was to be treated as a part of the CBA and conclude that the trial court did not err in treating the "me too" agreement contained in the letter of understanding as a part of the collective bargaining agreement.

{¶ 64} The city next argues that the "me too" grievance is not arbitrable. The "me too" provision of the Letter of Understanding provides:

8. On August 13, 2009, the parties agreed to a "me too" provision under which the City agreed to provide the TPCOA with any greater economic benefits newly provided to TFF Local 92 and/or TPPA either through settlement or impasse proceedings, including fact finding and/or conciliation.

{¶ 65} Section 2109.14 of the CBA provides for a four step grievance procedure. Binding arbitration is the last step. In its discussion of the fourth step, Section 2109.14 provides:

Arbitration shall be limited to matters concerning the interpretation of the code or application of the provisions of this Title of the Code. However, by mutual agreement of the City and the Association, the grievance procedure set forth above may be used in other matters.

25.

**{¶ 66}** The city contends that the "me too" grievance is not arbitrable because the offer to Local 92 was not an offer of "greater economic benefits newly provided," due to concessions agreed to by Local 92 under its agreement. Next, the city argues that Local 92 agreement was made without the benefit of "settlement or impasse proceedings, including fact finding and/or conciliation" as provided under the "me too" provision.

**{¶ 67}** TPCOA states that the package offered by the city to Local 92 allowed its members to avoid "forced economic sanctions" but the same economic opportunity was never offered to the TPCOA. It also asserts that the city's arguments go to the merits of the grievance and not to its arbitrability.

**{¶ 68}** TPCOA argues that the merits of a grievance are not considered in determining arbitrability and that the city's arguments demonstrate that the dispute really concerns interpretation of the "me too" provision and presents a classic issue of contract interpretation for an arbitrator.

**{¶ 69}** Citing *United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564, 568-69, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the trial court held that the city was seeking the court to weigh the merits of the "me too" grievance and that to do so would usurp the function of the arbitrator:

> [T]he proper inquiry for the Court here is whether Section 2109.14 of the CBA applies to the April 6, 2010, Grievance, so as to render that grievance subject to arbitration, not whether the CBA provision underlying that grievance, the "Me Too" Provision, actually applies to the

26.

circumstances involved here. The latter inquiry would improperly entangle the Court in weighing the merits of the grievance, thereby usurping the very function entrusted to the arbitration tribunal." (Footnote with supporting authorities omitted.)

{¶ 70} We agree. Rule three of the guiding principles approved by the Ohio Supreme Court in *Council of Smaller Ents. v. Gates, McDonald & Co.* fully supports the trial court's analysis.

{¶ 71} We also agree with the trial court's conclusion that the city's arguments over what constitutes "greater economic benefits newly provided" and "settlement or impasse proceedings, including fact finding and/or conciliation" raise questions of interpretation and application of the "me too" provision that are dedicated to the arbitrator to determine.

{¶ 72} We are guided by the principle that there is a presumption of arbitrability in this case:

> "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d at 666, quoting *AT & T Technologies, Inc. v.*

27.

*Communications Workers of Am.,* 475 U.S. at 650, quoting *United*

*Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 475 U.S. at 582.

{¶ 73} We cannot state with positive assurance that the arbitration clause in this case is not susceptible of an interpretation covering the "me too" grievance dispute.

{¶ 74} As discussed earlier in this opinion, the "me too" grievance does not involve the issue of whether the unilateral modification of the CBA by the city on the basis of claimed economic exigent circumstances was valid. The "me too" grievance is unaffected by any determination of whether there were exigent circumstances or whether the city was justified in unilaterally changing the CBA. Accordingly, we conclude that objections to arbitrability arising from jurisdictional issues relating to the unilateral modification of the CBA for claimed exigent circumstances do not pertain to arbitration of the "me too" grievance.

{¶ 75} We conclude that the trial court did not err in determining that the "me too" grievance is arbitrable under the grievance procedure of the CBA.

### Arbitrability of Counts One and Three of the Complaint

{¶ 76} With respect to Counts One and Three, the city argues that while the grievance procedure does contain broad language that encompasses complaints between the parties over interpretation and application of the CBA, the grievance procedure does not contain language with respect to arbitrability of unilateral mid-term concessions

28.

imposed on the basis of exigent circumstances. The city argues that compelling arbitration of a grievance for unilateral modifications of the CBA due to claimed exigent circumstances would usurp SERB's authority over unfair labor practice charges.

{¶ 77} As addressed earlier in this opinion, the parties are agreed that only proceedings before SERB can make the determination of whether exigent circumstances exist to permit unilateral modification of the CBA by the city. In arbitration, the arbitrator will apply the determination made on the issue in unfair labor practice proceedings before SERB, including appeals.

{¶ 78} Proceeding in this manner acts to limit binding arbitration of grievances under Counts One and Three of the complaint to matters clearly arbitrable under the CBA grievance procedure: disputes with respect to pension pick up (Section 2109.65 of CBA), health insurance contribution rates (Section 2109.64), and payment of specified wage rates (Section 2109.75).

{¶ 79} We find the city's arguments against arbitrability of the grievances under Counts One and Three of the complaint are without merit.

{¶ 80} We find Assignments of Error Nos. 4 and 5 not well-taken.

{¶ 81} We reverse the trial court judgments in part and affirm in part. We remand this cause to the Lucas County Court of Common Pleas with instructions for the court to modify its judgment ordering the city to proceed with arbitration of grievances in this case. The court shall modify the judgment to include instructions to the arbitrator setting

29.

forth the limitations to the arbitrator's authority as stated in this decision and judgment. In all other respects, we affirm. The parties are ordered to pay equal one-half shares of the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,<br>and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.         _____

                                                 JUDGE

Arlene Singer, J.        

                                               _____

Stephen A. Yarbrough, P.J.                              JUDGE
CONCUR.

                                             _____

                                             JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.