[Cite as *Toledo Clinic, Inc. v. Felix*, 2024-Ohio-489.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Toledo Clinic, Inc.                                   Court of Appeals No.  L-23-1037

      Appellee                                   Trial Court No.  CI0202102235

v.

Ashvin Felix                                          **DECISION AND JUDGMENT**

      Appellant                                  Decided:  February 9, 2024

* * * * *

Jared J. Lefevre and Charles E. Hatch, for appellee.

Francis J. Landry and Katherine A. Pawlak Macek, for appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** This is an appeal from a judgment of the Lucas County Court of Common Pleas granting appellee Toledo Clinic, Inc.'s motion to confirm arbitration award pursuant to R.C. 2711.09 and denying appellant Ashvin Felix's motion to vacate and/or modify arbitration award.  For the reasons that follow, the trial court's judgment is affirmed.

## Background

## Employment Agreement

**{¶ 2}** This case arises from an employment agreement that was executed in early 2017 between Felix, a physician, and Toledo Clinic, Inc. ("Toledo Clinic"). Under the contract, Felix, "the Professional," agreed to operate several urgent care facilities on behalf of the clinic on a full-time basis and, in exchange, the clinic agreed to reimburse Felix for certain business expenses and to provide facilities and support services adequate for the performance of Felix's duties under the agreement. The contract further provided that upon termination of the agreement "any unresolved deficit of the Professional existing as of the notice date of such termination shall be paid to the Toledo Clinic by the Professional." "Deficit" was defined in the contract to mean "the amount by which any and all expenses incurred by the Toledo Clinic in connection with employment of the Professional with the Toledo Clinic exceeds collections for professional services and other income turned over to the Toledo Clinic * * *."

**{¶ 3}** In a letter dated December 2, 2019, Toledo Clinic notified Felix that it was terminating the agreement without cause, pursuant to paragraph 13(c) of their contract, and that March 2, 2020, was the effective date of the termination.

## Arbitration

**{¶ 4}** On January 21, 2020, Felix filed a demand for arbitration, which asserted claims for breach of contract, fraudulent concealment, fraudulent misrepresentation,

2.

fraudulent inducement, and breach of duty of good faith and fair dealing. Toledo Clinic filed an answer denying Felix's claims and, further, stating that Felix's claims were barred by his "prior material breach of the contract." In addition, Toledo Clinic filed a counterclaim for breach of contract asserting that Felix was obligated to pay an unresolved deficit to the clinic in the amount of "at least $608,796.28." Both parties subsequently filed motions for summary judgment.

## A. Summary Judgment

{¶ 5} In an order dated September 17, 2020, the arbitrator denied the parties' motions for summary judgment on their respective breach of contract claims and granted the clinic's motion for summary judgment as to Felix's claims for fraudulent concealment, fraudulent misrepresentation, and fraudulent inducement.

{¶ 6} Felix's fraud claims were based on alleged promises that he would be the exclusive urgent care provider at the clinic. The arbitrator found that Felix "did not testify in his deposition that he was promised exclusivity, only that it existed at the time of contract execution." She further found that "[t]he Clinic's insistence on an employment agreement with no promise of exclusivity put [Felix] on notice that the Clinic was reserving its right to have another urgent care provider," yet "[h]e chose to sign the Employment Agreement anyway."

3.

## B. Interim Award

{¶ 7} The arbitrator subsequently issued an interim award, dated January 15, 2021, wherein she determined that Felix was the "prevailing party" and, as such, "shall be awarded costs and reasonable allowance for attorney's fees." In rendering this decision, the arbitrator found that Toledo Clinic breached the contract by denying Felix adequate support during the time period of "2017 through April of 2019." Specifically, the arbitrator found that Toledo Clinic violated the agreement when it failed to "fully assume the business expense of a marketing and business growth consultant," when it failed to "attend to the administrative function of providing and credentialing staff," and when it engaged a competitor "to conduct a similar if not comparable business right in the same neighborhood."

{¶ 8} The arbitrator additionally found that Felix, beginning in May 2019, failed to comply with his "contractual promise to devote full-time efforts to Toledo Clinic." Based on this finding, the arbitrator concluded that Felix was responsible for the "accumulation of deficit from May 1, 2019 until the end of his employment with Toledo clinic."

{¶ 9} The matter was then remanded to the parties for negotiations relating to damages owed to Toledo Clinic by Felix, consistent with her individual findings of fact under the contract, as stated in the interim award. Among these individual findings were determinations that: 1) the salary for marketing and business growth consultant Tim

4.

Schramko is an expense that is in "the category of business expenses" that are allocated to Toledo Clinic; and 2) a $50,000 addition to Felix's deficit that was made by the clinic in March 2020 was untimely and, thus, "shall not count towards any deficit payable by [Felix]."

{¶ 10} The parties failed to resolve the damages issues between them, and so they submitted briefs on the matter to the arbitrator.

**C. Interim Award Regarding Damages and Determination of Prevailing Party**

{¶ 11} On April 16, 2021, the arbitrator issued an "Interim Award Regarding Damages and Determination of Prevailing Party." In issuing the award, the arbitrator determined that because "Toledo Clinic's accounting records were the ones referenced by both parties in the course of their dealings," "[i]t follows that the calculation of [Felix's] deficit should be based on Toledo Clinic's deficit account records." The arbitrator noted that "[a]side from contesting certain categories of expenses and the time period covered by the report, [Felix] has made no assertion that [Toledo Clinic's] numerical calculations are erroneous. The arbitrator expressly disregarded an addendum that was included on Felix's damages submission on the grounds that it was "unsigned, unsworn and unauthorized," and, further, was "not referred to in [Felix's] brief."

{¶ 12} Upon her review of Toledo Clinics accounting records, the arbitrator concluded that Toledo Clinic's total deficit came to $671,003.65, but she also concluded that the clinic could not collect the full amount, because it stood in breach of its

5.

contractual obligation to provide adequate support to Felix from January 2017 through April 2019.

{¶ 13} The arbitrator then went on to state that "[d]uring the months of May 2019 through March 2020, records of patient visits show a dramatic decrease in [Felix's] performance, such that the accumulating deficit could no longer be attributed to [Toledo Clinic's] lack of support." The arbitrator characterized Felix's unavailability after April 2019 as a "lapse in his performance obligation," and emphasized that regardless of whether such lapse is "labeled a breach of contract," "it operated to dominate as the reason for the unprofitability of [Toledo Clinic's] urgent care enterprise."

{¶ 14} Noting that Felix had prevailed on the "main issue" of breach of contract by inadequate support, the arbitrator restated her earlier decision naming Felix as the prevailing party in the dispute.

{¶ 15} A "Surplus Deficit Report" that was submitted by Toledo Clinic calculated $187,950.83 as the deficit for the period of May 2019 through March 2020. Subtracting a depreciation amount of $3,839.21 from the $187,950.83 figure, the arbitrator calculated the final deficit amount to be $184,111.62. Thus, Felix was ordered to compensate Toledo Clinic in the amount of $184,111.62. Felix, as the prevailing party, was further ordered to submit a calculation of costs and attorney fees for payment by the clinic.

{¶ 16} On June 4, 2021, the arbitrator issued a final award, wherein she ordered that the damages owed by Felix to Toledo Clinic would be offset by costs and attorney

6.

fees of $48,565.81. Following an additional $300 offset for excessive administrative fees that were previously incurred by Felix, the total award to Toledo Clinic came to $135,245.81.

**Application to Confirm Arbitration Award in the Trial Court**

{¶ 17} On June 7, 2021, Toledo Clinic filed a complaint and application to confirm arbitration award in the trial court, pursuant to R.C. 2711.09. On July 9, 2021, Felix filed an answer with counterclaim and application to modify or vacate arbitration award pursuant to R.C. 2711.10 and 2711.11. In his answer, Felix asserted the following affirmative defenses, including: 1) The arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy; 2) The arbitrator was guilty of misconduct in misapplying the law which has prejudiced the rights of Defendant; 3) The arbitrator exceeded and imperfectly executed her powers such that a mutual, final and definite award upon the subject matter submitted was not made; 4) There was an evident material miscalculation of figures in the award; 5) There was an evident material mistake in the descriptions contained in the award; and 6) The arbitrator has awarded upon a matter not submitted to her. In his application to vacate the arbitrator's award under R.C. 2711.10, Felix asserted that the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy and in misapplying the law, which prejudiced the rights of the defendant. He further stated that the arbitrator exceeded and imperfectly executed her powers such that a mutual, final and definite award upon the

7.

subject matter submitted was not made. In his application to modify the arbitrators award under R.C. 2711.11, Felix asserted that there was an evident material miscalculation of figures in the award, that there was an evident material mistake in the descriptions contained in the award, and that the arbitrator awarded upon a matter not submitted to her.

{¶ 18} Competing motions were subsequently filed by Toledo Clinic and Felix, with Toledo Clinic moving to confirm the arbitration award and Felix moving to vacate or modify the award. In a judgment entry dated February 1, 2023, the trial court granted the motion to confirm the arbitration award and denied the motion to vacate and/or modify the arbitration award. Addressing Felix's claims that the arbitrator "ignored sections of his arbitration briefs and/or evidence presented by him," the trial court determined that "[w]hile the arbitrator may not have used [Felix's] arguments/evidence in the manner [Felix] hoped, it does not mean the arbitrator explicitly ignored them." Finding that the arbitrator's award "draws its essence from the parties' contract," the trial court ultimately declined to vacate the award.

{¶ 19} In rendering its decision, the court went out of its way to clarify that although the court had misgivings of its own about the fairness of the award, the award was, in fact, within the arbitrator's power to grant:

> Regardless of whether the Court may have reached a different finding and/or fashioned a different award (or no award at all), the record

does not appear to present a scenario so egregious that the Court has the power to vacate the arbitrator's award. [Felix] was obligated under [the agreement] to pay his operating deficits to [Toledo Clinic] upon termination. The Court does not find the arbitrator acted outside her authority when finding that [Toledo Clinic] breached the employment contract by failing to sufficiently support [Felix's] urgent care center(s) through April of 2019. The Court agrees that [Felix] should not be responsible for deficits incurred during [Toledo Clinic's] breach. However, the arbitrator found [Felix] also breached the employment contract from May 2019 through March 2020 to the extent that [Toledo Hospital's] failure to support [Felix's] urgent care center(s) could not be considered the cause of the deficits. As such, the arbitrator found [Felix] was liable for the accrued deficit while he was in breach, and [Toledo Clinic] was liable for the accrued deficit while it was in breach. * * *

* * *

While the Court may not necessarily agree with this interpretation of the facts, it cannot say the arbitrator's determination and award is so outlandish that it does not draw its essence from the parties' agreement. The arbitrator's determination reflects an attempt to place the deficits incurred with the respective party responsible for them. While this Court

may have reached a different determination as to [Toledo Clinic's] responsibility for deficits that accrued after years of failing to live up to its contracted-for bargain to support [Felix's] urgent care center(s), the arbitrator's award nevertheless draws its essence from the employment contract. As such, the Court is not empowered to vacate the arbitration award.

{¶ 20} Addressing Felix's motion to modify the award based on Felix's claim that the arbitrator awarded on matters not submitted to her -- specifically, that the arbitrator found a breach of contract against Felix where no such claim was raised by the clinic -- the trial court pointed to Toledo Clinic's Answer and Counterclaim to Felix's demand for arbitration, wherein the clinic asserted that "[a]ll or some of Felix's claims are barred by his prior material breach of the contract," and wherein the clinic asserted counterclaims for breach of contract based on Felix's failure to repay an unresolved $608,796.28 deficit to the clinic. In light of these assertions by Toledo Clinic, the trial court concluded, "Even if the crux of argument at arbitration was not related to [Felix's] alleged breach of contract from May 2019 through March 2020, this matter was nevertheless technically before the arbitrator. As such, the Court cannot find the arbitrator awarded on a matter not submitted to her."

{¶ 21} Finally, the court considered Felix's argument that his obligations under the contract ceased as a result of Toledo Clinic's material breach of failing to adequately

support Felix's urgent care clinics. Citing *Miller v. Management Recruiters Int'l, Inc.*, 180 Ohio App.3d 645, 2009-Ohio-236, 906 N.E.2d 1162, ¶ 26-27 (8th Dist.) for the proposition that "'[w]hen disputing parties agree to submit their controversy to binding arbitration, they agree to accept the result, even if it is legally or factually wrong,'" the trial court concluded that it was without power to determine whether Toledo Clinic's breach of the parties' contract was a material breach such that it voided any further contractual obligations by Felix.

{¶ 22} Felix timely appealed from the trial court's decision.

### Assignments of Error

{¶ 23} Felix asserts the following assignment of error on appeal:

I. The trial court erred in confirming the arbitration award instead of vacating the award.

II. The trial court erred in confirming the arbitration award instead of modifying the award.

### Analysis

### Arbitration

{¶ 24} In agreeing to have their disputes settled by an arbitrator, the parties in this case have agreed to accept the arbitrator's view of the facts and the meaning of the contract between them. *See Carothers v. Shumaker, Loop & Kendrick*, 2023-Ohio-1907, 215 N.E.3d 1217, ¶ 9 (6th Dist.), citing *Southwest Ohio Regional Transit Auth v.*

11.

*Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001).

"When agreeing to arbitration, the parties agree to accept the arbitrator's award even if it results in a legally or factually inaccurate decision." *Internatl. Ass'n. of Firefighters Local 92 v. Toledo*, 136 Ohio App.3d 56, 60-61, 735 N.E.2d 960 (6th Dist.1999); *see also Goodyear Tire & Rubber Co. v. Local Union No. 200,* 42 Ohio St.2d 516, 522, 330 N.E.2d 703 (1975) (Noting that it has been held that even a grossly erroneous decision is binding in the absence of fraud). "The parties do not forgo the substantive rights of their disputes in arbitration, but they trade the procedures and review of a judicial forum for the simplicity, informality and expediency of an arbitral forum." *Carothers* at ¶ 9, citing *Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

{¶ 25} "In order to uphold the strong public policy favoring private settlement of grievances, the General Assembly has limited the role of judicial review [of arbitration awards]." *Lake Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professional Ass'n. for Teaching of Mentally Retarded*, 71 Ohio St.3d 15, 17, 641 N.E.2d 180 (1994). R.C. Chapter 2711 governs arbitrations and sets forth the methods by which to challenge an arbitration award. *See Warren Educ. Ass'n. v. Warren City Bd. of Educ.*, 18 Ohio St. 3d 170, 172-173, 480 N.E.2d 456 (1985).

{¶ 26} "When reviewing a trial court's decision to confirm, modify, vacate, or correct an arbitration award, an appellate court should accept findings of fact that are not

12.

clearly erroneous but should review questions of law de novo." *Portage Cty. Bd. of Developmental Disabilities v. Portage Cty. Educators' Ass'n. for Developmental Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.W.3d 804, ¶ 2. An appellate court's review on appeal is not a de novo review of the merits of the dispute as presented to the arbitrator. *See Carothers* at ¶ 15, citing *Zeck v. Smith Custom Homes & Design, LLC,* 8th Dist. Cuyahoga No. 110574, 2022-Ohio-622, ¶ 12. (Additional citations omitted.) Instead, R.C. 2711.15 review is confined to the trial court's order and the question of whether any of the statutory grounds for vacating an award exist. *See Carothers* at ¶17; *Zeck* at ¶ 12.

{¶ 27} "The authority of an arbitrator to interpret and enforce a contract is drawn from the contract itself." *Cedar Fair. L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 5. "So long as arbitrators act within the scope of the contract, they have great latitude in issuing a decision. An arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court, because '[i]t is not enough * * * to show that the [arbitrator] committed an error – or even a serious error.'" *Id.* at ¶ 6, quoting *Stolt-Nielsen*, *S.A. v. AnimalFeeds Internatl. Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). In addition, arbitrators have "'broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned' in the applicable contract." *Id.*,

13.

quoting *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

{¶ 28} An arbitrator acts within her authority to craft an award "so long as the award 'draws its essence' from the contract – that is, 'when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." *Cedar Fair* at ¶ 7, quoting *Mahoning Cty. Bd. of Mental Retardation and Dev. Disabilities v. Mahoning Cty. TMR Edn. Ass'n.,* 22 Ohio St. 3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus. Where there is "a good-faith argument that an arbitrator's award is authorized by the contract that provides the arbitrator's authority, the award is within the arbitrator's power, but an award 'departs from the essence of a [contract] when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.'" *Id.* at ¶ 7, quoting *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Ass'n., Local 11, AFSCME, AFL-CIO,* 59 Ohio St.3d 177, 572 N.E.3d 71 (1991), syllabus; *see also, Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 19 ("In the absence of language restricting the authority of an arbitrator to review a particular subject matter or to award a particular remedy, courts will generally hold than an arbitrator has the authority to make the award and to fashion a remedy even though the agreement is silent on the issue of remedial authority.").

14.

**Application to Vacate Arbitration Award Under R.C. 2711.10**

{¶ 29} R.C. 2711.10 provides that, upon the application of any party, the court of common pleas shall make an order vacating an arbitration award if:

(A) The award was procured by corruption, fraud, or undue means.

(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.

(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶ 30} This court has clarified that "'the misbehavior of an arbitrator may only serve as the basis for vacating an arbitration award under R.C. 2711.10(C) if it results in prejudice.'" *Fowler v. Menards*, 2018-Ohio-4052, 113 N.E.3d 568, ¶ 28 (6th Dist.), quoting *Hoffbauer v. Wayne Homes*, 1st Dist. Hamilton No. C-990750, 2000 WL 1062044 *3 (Aug.4, 2000).

**Allegations of Arbitrator Misconduct under R.C. 2711.10(C)**

{¶ 31} Felix initially argues that the arbitrator engaged in misconduct under R.C. 2711.10(C) in ignoring the addendum that was included in his counsel's submission on damages. The addendum, submitted in addition to the evidence and arguments submitted by his counsel, set forth Felix's own explanation and calculation of the amount that he believed was owed to him. Following objections by the clinic, the arbitrator ultimately declined to consider the addendum on the grounds that it was an "unsigned, unsworn, and unauthorized submission." Instead -- as evidenced in the findings contained in the interim award regarding damages -- the arbitrator elected to focus on and address the calculations that were provided by Felix's counsel.

{¶ 32} As Felix's addendum represented only a portion of the documentation on damages that was submitted by Felix in the arbitration, and as the record establishes that the arbitrator did consider other such evidence pertinent and material to Felix's calculation of damages, we do not find that the omission resulted in prejudice to Felix such that the award should be vacated. Nor do we find that the arbitrator was guilty of misconduct in selecting which and whose figures would be accorded weight. Accordingly, we do not find that the trial court erred in refusing to vacate the arbitration award pursuant to R.C. 2711.10(C).

**Allegations that the Arbitrator Exceeded or Imperfectly Executed Her Powers Under R.C. 2711.10(D)**

**A. Allegations that the Arbitrator Exceeded her Powers by Holding Felix Responsible for Duties to be Fulfilled by the Clinic**

{¶ 33} Felix next argues that the arbitrator "exceeded her powers" under R.C. 2711.10(D) when she "held Dr. Felix responsible for duties to be fulfilled by [the clinic]." Essentially, Felix complains that in light of the clinic's breaches, both before and after May 2019, the arbitrator's decision to hold Felix accountable for the accumulation of deficit after April 2019 was arbitrary and without any "rational nexus to the contract in this decision."

{¶ 34} Upon de novo review, we find the arbitrator, who was empowered to decide all issues and claims related to the employment contract, acted within the scope of the contract. We further find that her award was within her broad authority to fashion, as it draws its essence from the employment contract and does not conflict with any express terms of the contract.

{¶ 35} As indicated above, the trial court disagreed with the arbitrator's decision, but also determined that it was not empowered to vacate the arbitration award on this ground. Indeed, "[t]he fact that the common pleas court reviewing an award under R.C. 2711.10 "may have arrived at a different conclusion than did the arbitrator is immaterial. The common pleas court does not balance the equities, weigh the evidence or assess the credibility of witnesses." *Carothers* at ¶ 28, quoting *Motor Wheel Corp. v. Goodyear*

*Tire & Rubber Co.*, 98 Ohio App.3d 45, 52, 647 N.E.2d 844 (8th Dist.1994.) (Additional citations omitted.)

### B. Allegations that the Arbitrator Exceeded her Powers by Ignoring Felix's Termination "Without Cause"

{¶ 36} Felix additionally argues that the arbitrator exceeded her power "when she ignored the termination letter which stated Dr. Felix was terminated without cause." With this argument, Felix challenges the arbitrator's finding that Felix -- like the clinic -- breached the employment agreement. In so doing, Felix attacks both the arbitrator's view of the facts and her related attempt to allocate the deficits incurred in connection with the contract. Because this argument ignores the fact that a court reviewing an arbitration decision "must be deaf to claims that an arbitrator made factual or legal errors," *Sicor Secs., Inc. v. Albert*, 2d Dist. Montgomery No. 22799, 2010-Ohio-217, *3, it is properly dismissed as without merit.

### C. Allegations that the Arbitrator Exceeded Her Powers by Ignoring Portions of the Employment Contract in Fashioning Her Award

{¶ 37} Felix next argues that the arbitrator exceeded her power "when she ignored key portions of the contract in assessing the accounts receivable." In the interim award regarding damages, the arbitrator cited the following contract provision in support of her conclusion that "all receivables generated by [Felix] are the property of [the Clinic], and therefore should not be set off:"

18.

> All accounts receivable and fees arising from services rendered by the Professional, wherever performed, shall belong to the Toledo Clinic and the Professional shall not be entitled to any portion of such fees or receivables for any reason whatsoever, it being specifically agreed that the compensation to be paid by the Toledo Clinic to the Professional as set forth in Paragraph 3 shall be his full compensation for all professional services rendered.

The arbitrator further found that because the contested accounts receivable were at least a year old or older at the time of her decision, it was "not reasonable to view such receivables as an asset."

{¶ 38} According to Felix "[i]t is not rational to award the accounts receivable to Toledo Clinic when Dr. Felix is held responsible for the salaries of the providers who provided the services." He further argues that the decision "does not draw its essence from the contract, but instead, substitutes the arbitrator's own beliefs and thoughts for that of clear contract language." We disagree. Not only does the award clearly draw its essence from the contract, it does not conflict with any express terms of the contract, and it is based upon fact-finding and legal conclusions by the arbitrator that this court is not permitted to review.

{¶ 39} Felix further complains that the surplus deficit reports provided by the Toledo Clinic "contain categories not included in the [applicable] definition of

19.

'expenses,'" including amounts for depreciation and interest, and that such amounts should not be included in any final deficit calculation. In connection with this complaint, we note that arbitrator determined in her interim award regarding damages that "expenses" are "cash expenditures paid by Toledo Clinic," and that depreciation was not eligible for inclusion in the calculation of unresolved deficit. She also found, however, that interest, as a cash expense, was properly included.

{¶ 40} More importantly, we find, once again, that the findings to which Felix objects were properly made by the arbitrator who was empowered to decide all issues and claims related to the employment contract. We further find that the award draws its essence from the contract and does not conflict with any express terms of the contract.

{¶ 41} Finally, Felix argues that the arbitrator exceeded her authority when she determined that Felix was in breach of the contract during the period from May 2019 to December 2019 and that -- as a result of this improper fact finding -- she crafted an award that was not based on the claims in front of her. In making this argument, Felix reiterates that the clinic terminated him without cause and, further, posits that the clinic never asserted a claim against him for a breach of contract that was said to have occurred prior to his termination.

{¶ 42} In this instance, Felix's asserted factual basis, reasoning and conclusion are all flawed. First, the clinic's answer and counterclaim to Felix's demand for arbitration assert both: 1) a defense that "[a]ll or some of Felix's claims are barred by his prior

20.

material breach of the contract;" and 2) a claim for breach of contract claim based on Felix's failure to repay a deficit sum to the clinic. Although the arbitrator, in determining the prevailing party, did state that the main issue in the dispute was whether the clinic breached the employment agreement, she acknowledged that there were, in addition, "collateral claims." Many of these claims involved allegations of Felix's part in the eventual failure of his urgent care venture.

{¶ 43} That the arbitrator attempted to allocate financial responsibility for the overall deficit in conformity with the evidence is clear. The law provides that "[i]n the absence of language restricting the authority of an arbitrator to review a particular subject matter or to award a particular remedy, courts will generally hold that an arbitrator has the authority to make the award and to fashion a remedy even though the agreement is silent on the issue of remedial authority." *Miller*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, at ¶ 19. Further, "'[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority' a court should not overturn the decision, even if 'convinced he committed serious error.'" *Painesville City Local Schools Bd. of Edn. v. Ohio Ass'n. of Pub School Emps.,* 11th Dist. Lake No. 2005-L-100, 2006-Ohio3645, ¶ 37, quoting *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *see also Carothers*, 2023-Ohio-1907, 215 N.E.3d 1217, at ¶ 41-46 (although appellant did not specifically ask for non-compete clause to be rewritten, where the issue submitted to arbitration was

21.

the enforceability of the non-compete and where the arbitration clause contained no restriction to be fashioned by the arbitrator, the arbitrator was found to have the authority to issue an advisory opinion and to order revisions to the geographic and temporal restrictions in the partnership agreement's non-compete clause.). Thus, contrary to Felix's claim, the arbitrator's allocation of financial responsibility was not error.

{¶ 44} In fashioning the remedy in this case, the arbitrator acted within her authority inasmuch as there is a rational nexus between the agreement and the award, the award is not arbitrary, capricious or unlawful, and the award does not conflict with the express terms of the agreement.

### D. Allegations that the Arbitrator Exceeded her Powers When She Ignored Evidence that Toledo Clinic Cut Down Hours at the Urgent Care in an Effort to Decrease Felix's Earnings

{¶ 45} Felix also argues that the arbitrator exceeded her powers when she ignored evidence that the clinic reduced hours at the urgent care, rendering Felix unable to work full-time as required under the contract. We disagree that the arbitrator "ignored" this evidence. In determining as part of her fact-finding that the "lapse" in Felix's performance obligation "operated to dominate as the reason for the unprofitability of Felix's urgent care enterprise," the arbitrator merely rejected Felix's interpretation of the facts. To the extent that the decision impacted her award, it comports with our earlier determination that the award, fashioned in part on the basis of this decision, draws its essence from the contract.

22.

{¶ 46} For the foregoing reasons, we find that the trial court appropriately refused to vacate the arbitration award on the grounds that the arbitrator exceeded her powers.

### E. Allegations that the Arbitrator Imperfectly Executed Her Powers when she Misapplied the Law in Disposing of the Claims for Fraudulent Concealment, Fraudulent Inducement, and Fraudulent Misrepresentation.

{¶ 47} Felix next argues that the arbitrator imperfectly executed her powers when she "misapplied the law" in disposing of his claims for fraudulent concealment, fraudulent inducement, and fraudulent misrepresentation. Specifically, Felix claims that the arbitrator misapplied the parol evidence rule in connection with his claim that in entering into a business relationship with the clinic he relied upon a promise by the clinic that he would be the exclusive urgent care provider.

{¶ 48} At the outset of her analysis of Felix's claims for fraud, the arbitrator observed that Felix never testified in his deposition that he was promised exclusivity, only that he was the exclusive urgent care provider at the time the contract was executed. She further found that the clinic's insistence on an employment agreement with no promise of exclusivity, despite Felix's prior request for one, put Felix on notice that the clinic was reserving its right to have another urgent care provider. Finally, she pointed out that the terms of the agreement provide that it is the "Entire Agreement" between the parties, "thereby expressly excluding any prior representations or understandings as binding." On the basis of these facts, the arbitrator concluded that "[t]here is no genuine

issue as to any material fact regarding the fraud claims, and viewed in the light most favorable to Felix, the facts provide no support for allegations of [fraud]."

{¶ 49} In this appeal, Felix argues that the arbitrator misapplied the parol evidence rule inasmuch as the parol evidence rule "is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud." Aside from the fact that Felix does not appear to have submitted any extrinsic evidence in support of his claim – which, of course, militates in favor of the arbitrator's decision -- we remain mindful that courts "do not sit to hear claims of factual or legal error by an arbitrator," *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001), and that "even a grossly erroneous decision" may be binding in the absence of fraud. *Goodyear*, 42 Ohio St.2d 516, 330 N.E.2d 703, at 522. As Felix makes no allegation of fraud in connection with the award, we do not find that the arbitrator imperfectly executed her powers in such a way, or to such an extent, that the award should be vacated.

{¶ 50} Because we do not find that any grounds exist for vacating the arbitration award pursuant to R.C. 2711.10, Felix's first assignment of error is found not well-taken. In his second assignment of error, Felix argues, in the alternative, that the arbitrator's award should be modified.

24.

## Application to Modify Arbitration Award Under R.C. 2711.11

{¶ 51} R.C. 2711.11 provides that, upon the application of any party, the court of common pleas shall make an order modifying or correcting an arbitration award if:

(A) There was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

(B) The arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(C) The award is imperfect in matter of form not affecting the merits of the controversy.

{¶ 52} In this case, Felix argues that the arbitrator's award should be modified because the arbitrator allegedly: 1) awarded upon a matter not submitted to her, pursuant to R.C. 2711.11(B); and 2) miscalculated damages, pursuant to R.C. 2711.11(A).

### Allegations that the Arbitrator Awarded Upon a Matter Not Submitted to Her, Pursuant to R.C. 2711.11(B)

{¶ 53} Once again, Felix argues that the arbitrator awarded on a matter not submitted to her when she determined that he breached the employment contract with the clinic. As indicated above, breach of contract was raised by the clinic both as a defense and as a counterclaim against Felix. Even in the absence of such a claim or defense, however, allocation of the deficit among the responsible parties was within the

25.

arbitrator's authority, because, as we have repeatedly stated in this decision, there is a rational nexus between the agreement and the award, the award is not arbitrary, capricious or unlawful, and the award does not conflict with the express terms of the agreement.

{¶ 54} Felix similarly argues that the arbitrator awarded on a matter not submitted to her when she determined that Felix "breached the covenant of good faith and fair dealing." This finding, which was expressed in the arbitrator's interim award, was made in the context of the arbitrator's consideration of Felix's claim for such against the clinic. The arbitrator stated only that "[b]y the end of their relationship, the obligation of good faith and fair dealing was disrespected equally by both parties, providing neither with access to a remedy on this basis." Under Ohio law, "every contract contain[s] an implied duty for the parties to act in good faith and to deal fairly with each other." *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 2005-Ohio-4850, 839 N.E.2d 49, ¶ 27. Thus, breach of this implied covenant is at issue whenever breach of contract is claimed, and, in this case, was well within the arbitrator's authority to determine. *Id.* at ¶ 23 (good faith and fair dealing is part of the contract, not an independent claim).

### Allegations that the Arbitrator Miscalculated Felix's Damages

{¶ 55} Finally, Felix asserts that the arbitrator miscalculated his damages. Specifically, Felix asserts that the arbitrator "refused to calculate" the appropriate damages and lost profit he claims to have suffered. Rather than asserting a

26.

miscalculation of figures, however -- which is a matter that is subject to our review -- this claim goes to the merits of the dispute as presented to the arbitrator, which is clearly beyond our purview.

{¶ 56} Felix additionally claims that, pursuant to the findings in the arbitrator's interim award, the final award should be modified to include: 1) the $50,000 that was improperly added to his deficit in March 2020; and 2) Tim Schramko's salary "of $127, 411.50." As indicated above, the arbitrator determined in her interim award that a $50,000 addition to Felix's deficit that was made by the clinic in March 2020 was untimely and, therefore, would not count toward any deficit payable by Felix. She further found that Tim Schramko's (unspecified) salary was in the category of business expenses allocated to Toledo Clinic.

{¶ 57} In the subsequently issued interim award regarding damages, the arbitrator determined that the clinic's total deficit came to $671,003.65, but that the clinic could not collect the full amount because it stood in breach of the employment agreement from January 2017 through April 2019. Relying on the $187,950.82 figure that was set forth in Toledo Clinic's "Surplus Deficit Report," and then subtracting a depreciation amount of $3,839.21, the arbitrator concluded that $184,111.62 was the final deficit amount for the period of May 2019 through March 2020. (In making this decision, the arbitrator noted that Felix made no assertion that the clinic's numerical calculations were erroneous.)

27.

**{¶ 58}** Given the record before us, it is impossible to discern whether or not the offsets that were discussed in the interim award, and which are now claimed by Felix, were ever factored into Toledo Clinic's final award, as set forth in the subsequently issued interim award on damages. Because we recognize that "a strong presumption favors the regularity and integrity of an arbitrator's award," *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶14 (1st Dist.), absent evidence to suggest that the offsets were not, in fact, factored into the final deficit amount, we cannot modify the amount of the award on the grounds that Felix currently asserts. Accordingly, appellant's second assignment of error is not well-taken.

## Conclusion

**{¶ 59}** The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

28.

Thomas J. Osowik, J.                       _____

                                                   JUDGE

Gene A. Zmuda, J.

                                     _____

Myron C. Duhart, J.                        JUDGE
CONCUR.

                                     _____

                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.